CORN PRODUCTS REFINING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE.

Docket No. 20399. Promulgated February 20, 1951.

*Jay O. Kramer, Esq.*, for the petitioner.
*Walt Mandry, Esq.*, for the respondent.

OPINION.

Murdock, *Judge:* The parties have argued two points. One is whether contracts for the future delivery of corn are to be treated as capital assets in the hands of the petitioner so that gains or losses thereon are capital gains or losses, and the other is whether the wash sales provisions of section 118 apply to those transactions. The petitioner has not accounted for or reported its gains and losses from futures transactions as capital gains and losses but, on the contrary, treated the 1940 gains as a reduction in the cost of raw materials and the losses in prior years as an addition to the cost of goods sold. It thus reduced its income for prior years by the full amount of large losses sustained in those years on futures transactions and, being consistent, in 1940 reduced the cost of goods sold by the full amount of the 1940 gain. The Commissioner, in determining the deficiency, made no change in the taxpayer's treatment of the futures transactions and now insists that no change is necessary or proper. Nevertheless, the petitioner now seeks to have the transactions regarded as resulting in capital gains and losses within section 117.

Success on that point would have no effect on the tax liability in this case unless the second contention of the petitioner is also sustained. The petitioner sustained a short term capital loss of $5,718.27 on bonds and it did not show any short term capital gains on its return against which to offset that loss. However, the Commissioner, in determining the deficiency, held that there were short term capital gains of $28,-260.71 on foreign exchange and allowed the short term capital losses to be deducted in full. His action in this respect is not challenged in this proceeding. The tax is the same whether the $680,587.39 reduces cost of goods sold or is taxed as a short term capital gain. Thus, it is not necessary to decide in this case whether or not section 117 applies to the futures transactions unless it is held that section 118 also applies. The question of whether transactions in commodity futures are within section 117 is a difficult one as is shown by prior decisions cited by the parties. While there would seem to be logic and common sense in the position which the Commissioner now takes and which the petitioner has always taken in accounting for these trans-

actions, nevertheless, the Court expresses no opinion on that subject at the present time.

Section 118 of the Internal Revenue Code was enacted to prevent a deduction for losses sustained in wash sales of securities; that is, where the taxpayer at or about the time of a sale acquires identical or substantially identical securities. The deduction is postponed until the securities are disposed of and not replaced within 30 days. It provides that no deduction for loss shall be allowed under section 23 (f), with exceptions not here material, if the loss is claimed to have been sustained from any sale "of shares of stock or securities" where within 30 days before or after the sale the taxpayer has acquired "substantially identical stock or securities." Other provisions are to the effect that the basis and the holding period of the securities sold attach to the securities purchased where the wash sale provision has applied. The petitioner, by tracing its loss transactions of prior years and assuming that a number of those transactions were wash sales within the meaning of section 118, arrives at bases for the futures sold in 1940 which would show capital gains of $62,328.10 and capital losses of $202,662.60 instead of the gain of $680,587.39 which it reported in accordance with its consistent method of accounting. It relies on *Trenton Cotton Oil Co.* v. *Commissioner*, 147 Fed. (2d) 33, rehearing denied, 140 Fed. (2d) 208, reversing on this point a memorandum opinion of this Court.

We are unable to agree with the opinion in the cited case holding that the words "stocks and securities," as used in section 118, include commodity futures and that a new future contract is "substantially identical" with a prior contract. The Appellate Court reasoned that the futures contracts were securities because they were pledged with the broker "who advanced the necessary funds to purchase the oil." Any pledged property is a security in that sense, but obviously not all pledged property is a security within the meaning of section 118. Furthermore, the reasoning is unsound since the broker does not advance the funds necessary to purchase the commodity. The buyer of a commodity futures contract puts up a margin with his broker which is a percentage of the purchase price called for in the contract. That margin is held as security until the contract is closed out. If the purchaser of the contract takes delivery of the corn, he then pays the additional amount called for under the contract, but if he sells the contract he gets credit for the margin which he put up with his broker, plus the price at which the broker sold the contract, and neither he nor the broker makes any further payment on account of the purchase price which that particular purchaser owed under the contract. The Appellate Court also reasoned that the futures contract was "a security" because "the petitioner had no more than a document giving

it the right to demand and receive property not in its possession." The owner of a commodity future has no right to demand the property except at maturity upon payment of the contract price. All executory contracts giving a person the right to demand and receive property upon the payment of a contract price are not to be regarded as securities within the meaning of section 118.

Furthermore, a new future commodity contract is not "substantially identical" with any prior contract even though the quantity involved in each is identical. It would be purely accidental if the new contract was with the same party as the one who had agreed to sell the commodity in the earlier contract. The price would probably be different and the delivery date would certainly be different. The United States District Court, Middle District of Georgia, on April 11, 1940, in the case of *Valley Waste Mills* v. *Page*, 27 A. F. T. R. 957, held, in regard to cotton futures, that the new contract was not "substantially identical" with the old one under such circumstances and, with that, we agree. Cf. section 117 (1) (3) (B) as added by section 211, Revenue Act of 1950. Cotton futures were considered by the Circuit Court of Appeals for the Fifth Circuit in *Valley Waste Mills* v. *Page*, 115 Fed. (2d) 466, certiorari denied, 312 U. S. 681, and it is apparent from the opinion there that such a future is not a security in any generally recognized sense but simply a contract between two parties in which one agrees to supply at a designated time in the future a stated quantity and quality of goods, upon payment of a stated price and on which a part of the contract price, called a margin, has been paid by the buyer to his broker to bind him until the sale is consummated or the contract is sold. See also *Rosenthal* v. *Brown*, 247 N. Y. 479, 160 N. E. 921. Cf. *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U. S. 462; *Commissioner* v. *Segall*, 114 Fed. (2d) 706; *Commissioner* v. *Sisto Financial Corporation*, 139 Fed. (2d) 253. Corn futures are not different in this respect from cotton futures. Furthermore, corn futures, such as are here involved, are for such short periods and are of such a peculiar character that they do not lend themselves to the evil which section 118 was intended to prevent. Sales of such contracts are conpleted transactions when made, the gain or loss is recognized at that time, and there is no postponement of the gain or loss for tax purposes. *Valley Waste Mills* v. *Page*, *supra; Robert M. Harriss*, 44 B. T. A. 999, affd., 143 Fed. (2d) 279. Section 118 has no application in this case.

The parties have stipulated that certain adjustments are to be made in computing the tax liability of the petitioner.

*Decision will be entered under Rule 50.*