ERWIN DE REITZES-MARIENWERT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 34881. Promulgated March 4, 1954.

*Bernard E. Singer, Esq.,* and *Herman R. Perper, Esq.,* for the petitioner.

*John J. O'Toole, Esq.,* for the respondent.

849

OPINION.

*Issue No. 1.*

TIETJENS, *Judge:* The petitioner's argument, in substance, is that the nationalization of Nitra's properties by the Czechoslovakian Government resulted in a loss to him in 1946 which is deductible in full

under the provisions of section 23( e),[1] or section 117 (j) (2),[2] or section 112 (f)[3] of the Internal Revenue Code. The pertinent provisions of these sections are set forth in the margin.

The respondent meets this argument as follows. First, he contends that, assuming a loss was suffered in 1946, the question is moot because the loss was a capital loss and thus limited by section 23 (g),[4] the full

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions :

\*     \*     \*     \*     \*     \*     \*

(e) LOSSES BY INDIVIDUALS.—In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

(1) if incurred in trade or business ; or

(2) if incurred in any transaction entered into for profit, though not connected with the trade or business ; or

(3) of property not connected with the trade or business, if the loss arises from fires, storms, shipwreck, or other casualty, or from theft. No loss shall be allowed as a deduction under this paragraph if at the time of the filing of the return such loss has been claimed as a deduction for estate tax purposes in the estate tax return.

[2] SEC. 117. CAPITAL GAINS AND LOSSES.

(j) GAINS AND LOSSES FROM INVOLUNTARY CONVERSION AND FROM THE SALE OR EXCHANGE OF CERTAIN PROPERTY USED IN THE TRADE OR BUSINESS.—

(2) GENERAL RULE.—If, during the taxable year, the recognized gains upon sales or exchanges of property used in the trade or business, plus the recognized gains from the compulsory or involuntary conversion (as a result of destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation or the threat or imminence thereof) of property used in the trade or business and capital assets held for more than 6 months into other property or money, exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. If such gains do not exceed such losses, such gains and losses shall not be considered as gains and losses from sales or exchanges of capital assets. For the purposes of this paragraph :

(A) In determining under this paragraph whether gains exceed losses, the gains described therein shall be included only if and to the extent taken into account in computing gross income and the losses described therein shall be included only if and to the extent taken into account in computing net income, except that subsection (d) shall not apply.

(B) Losses upon the destruction, in whole or in part, theft or seizure, or requisition or condemnation of property used in the trade or business or capital assets held for more than 6 months shall be considered losses from a compulsory or involuntary conversion.

[3] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(f) INVOLUNTARY CONVERSIONS.—If property (as a result of its destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation, or the threat or imminence thereof) is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted, or into money which is forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property similar or related in service or use to the property so converted, or in the acquisition of control of a corporation owning such other property, or in the establishment of a replacement fund, no gain shall be recognized, but loss shall be recognized. If any part of the money is not so expended, the gain, if any, shall be recognized to the extent of the money which is not so expended (regardless of whether such money is received in one or more taxable years and regardless of whether or not the money which is not so expended constitutes gain).

[4] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions :

\*     \*     \*     \*     \*     \*     \*

(g) CAPITAL LOSSES.—

(1) LIMITATION.—Losses from sales or exchanges of capital assets shall be allowed only to the extent provided in section 117.

(2) SECURITIES BECOMING WORTHLESS.—If any securities (as defined in paragraph (3) of this subsection) become worthless during the taxable year and are capital assets,

amount of which as so limited has been allowed. Second, he contends that the record is devoid of evidence fixing the amount of the loss incurred, if any deductible loss was in fact incurred. And third, he argues that 1945 rather than 1946 was the year of loss.

We think the respondent's determination must be sustained. The property owned by the petitioner was stock in Nitra. So far as we can ascertain from the record this stock as such was never seized or nationalized or confiscated by Czechoslovakia. As we read and interpret the decrees of the Czechoslovakian Government on which the petitioner relies, these decrees nationalized the assets of Nitra and not the stock. Perhaps this had the effect of destroying the value of the corporate assets, but even this is not established by the evidence. The fact remains that the petitioner's stock itself was not seized or confiscated. We are not overlooking the fact that the petitioner's stock was in April of 1946 turned over to representatives of Czechoslovakia "purportedly" pursuant to Czechoslovakian Decree No. 95. Nevertheless, the record before us does not contain this decree, we are unable to determine its effect or purpose, and for all that appears, this transfer was made at the voluntary instruction of the petitioner and cannot be considered a seizure or confiscation.

Presumably the nationalization of corporate assets had the effect of rendering the petitioner's stock worthless. Cf. *United States* v. *S. S. White Dental Mfg. Co.*, 274 U. S. 398; *Emil Stern, et al.*, 5 B. T. A. 89. But losses from the worthlessness of stock are by section 23 (g) (2) "to be considered as a loss from the sale or exchange * * * of capital assets." Such a loss would avail the petitioner nothing in this proceeding since for 1946 he has already claimed and been allowed the full amount of capital losses permitted him by the statute. Accordingly, there might be some justification for not deciding the point at all. Cf. *Corn Products Refining Co.*, 16 T. C. 395.

Furthermore, we think the respondent's contention that the year of loss was 1945 instead of 1946 is correct. The fundamental nationalization Decree No. 101 was dated October 24, 1945. This decree nationalized "as of the date of [its] publication" sugar processing plants and sugar refineries. True, the "enterprises" so nationalized were to be subsequently "announced" and it was not until January 9, 1946, that it was so announced with respect to Nitra. Nevertheless the decree of January 9, 1946, states that Nitra was among those enterprises which "were by [Decree No. 101] nationalized" and further

the loss resulting therefrom shall, for the purposes of this chapter, be considered as a loss from the sale or exchange, on the last day of such taxable year, of capital assets.

(3) DEFINITION OF SECURITIES.—As used in this paragraph (2) of this subsection the term "securities" means (A) shares of stock in a corporation, and (B) rights to subscribe for or to receive such shares.

that by "this nationalization the Czechoslovak State acquired the possession" of Nitra. In the light of this language, which speaks of past action and is merely confirmatory of what had been done, we determine that the nationalization of Nitra took place in 1945 and that whatever loss the petitioner suffered because of the nationalization occurred in 1945 and not in 1946 as claimed by the petitioner.

On the amount of the loss the evidence is very unsatisfactory, but in view of what we have said above it is unnecessary to discuss or attempt to make any finding in that respect.

Neither do we think it necessary to discuss the possible application of section 127, "War Losses," to this situation. The respondent has stressed the possible application of this section on brief, but the petitioner has ignored it entirely and our disposition of the issue has been made without reference to it. Accordingly, nothing would be gained by further analysis of that section.

Furthermore, since we are unable to determine that the petitioner's stock was seized or confiscated, the petitioner's contention that his property was "involuntarily converted" by seizure by the Czechoslovakian Government is without merit and we do not see that section 117 (j) or 112 (f) is brought into play.

*Issue No. 2.*

On the issue involving deduction of the amount paid to the petitioner's mother, the respondent emphasizes that the arrangement between the petitioner and his mother is to be scrutinized with the care that interfamily arrangements resulting in the splitting of family income require. He further argues that the amount paid by the petitioner to his mother was not "interest" since the agreement between them did not contemplate interest. Also that since the mother was not a partner in Cereal Products Company she was not entitled to share in the partnership income. But even if we agree with these arguments it does not follow that the respondent's determination is correct that the petitioner cannot deduct the $4,602.31 paid to his mother.

She furnished $25,000 (or one-half) of the capital which the petitioner put into Cereal Products Company. This was done pursuant to an agreement under which the petitioner bound himself to pay his mother 40 per cent of his 50 per cent share of the profits from the company. Repayment of the cash thus advanced was to be made upon liquidation or termination of the partnership. Although the mother was not a partner we think the over-all fact of the arrangement was that the required payment by the petitioner could be treated either as a payment in the nature of interest for the use of the cash

advanced by his mother or that the arrangement amounted to a subventure between the two pursuant to which the petitioner's profits from the partnership were to be divided in the agreed ratio. *Sommers v. Commissioner*, (C. A. 2) 195 F. 2d 680; *Dorzback v. Collison*, (C. A. 3) 195 F. 2d 69. We decide against the respondent on this point.

*Decision will be entered under Rule 50.*