H. L. Hunt and Ruth Ray Hunt v. Commissioner.
Hunt v. Commissioner
Docket No. 229-66.
United States Tax Court
T.C. Memo 1968-161; 1968 Tax Ct. Memo LEXIS 136; 27 T.C.M. (CCH) 791; T.C.M. (RIA) 68161; July 29, 1968. Filed Ivan Irwin and Ralph B. Shank, 2827 First Nat'l Bank Bldg., Dallas, Tex., for the petitioners. Roy E. Graham, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioners' income tax for the calendar years 1958, 1959, and 1960 in the amounts of $265.48, $830,196.78, and $68,524.85, respectively. The parties have disposed of some of the issues raised by the pleadings by agreement. The issues remaining for decision are: (1) Whether petitioners are estopped by an agreement executed by H. L. Hunt in connection with the settlement of the estate tax liability of the estate of Lyda Bunker Hunt from claiming deductions for interest accrued on their books as due to *137 the estate in the years 1958, 1959, and 1960. (2) If petitioners are not estopped from claiming deductions for interest due to the estate of Lyda Bunker Hunt, whether the amount which was accrued on their books 792 in 1959 as interest payable to the estate for the period from the date of decedent's death to August 3, 1959, is deductible as interest on indebtedness under the provisions of section 163(a), I.R.C. 1954. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners at the time of the filing of the petition herein, were residents of Dallas, Texas. They filed their joint Federal income tax returns for the calendar years 1958, 1959, and 1960 with the district director of internal revenue at Dallas, Texas. An extension of time for filing their return for the calendar year 1958 was granted to June 15, 1959, and petitioners' return for the year 1958 was filed on that date. Petitioners kept their books and computed their income on an accrual method of accounting and the tax returns for the years here in issue were prepared on an accrual method. H. L. Hunt will be referred to as petitioner. Ruth Ray Hunt is a *138 petitioner only because of filing joint Federal income tax returns with her husband. Petitioner has, for many years, been active in the oil and gas business. He conducts operations as an individual and is president of Hunt Oil Company (hereinafter referred to as Hunt Oil), a Delaware corporation, which is also engaged in the oil and gas business. Petitioner owned over 80 percent of the stock of Hunt Oil during all the years here in issue. Lyda Bunker Hunt, the first wife of petitioner, died on May 6, 1955. She left a will naming her son, William Herbert Hunt, independent executor. He qualified as independent executor of the estate of Lyda Bunker Hunt on May 24, 1955, and continued to serve until the administration terminated and final distribution of the assets was made on October 1, 1960. Petitioner did not serve as executor or administrator of the estate of his former wife at any time and he was not a devisee under the will of Lyda Bunker Hunt. Petitioner, at the time of trial, was 79 years old. Petitioner and his first wife, Lyda Bunker Hunt, had moved to Texas from El Dorado, Arkansas in 1931. Arkansas is a noncommunity property state. Texas is a community property state. *139 Petitioner had acquired a separate estate before moving to Texas and he continued to amass a very large fortune after his arrival in Texas, part of which was community property and part of which was not community property. An estate tax return was filed for the estate of Lyda Bunker Hunt which showed a taxable estate of $1,994,517.95 and a tax due of $647,207.79. Respondent's representatives after investigation of this estate tax return wrote a letter referred to as a "thirtyday letter" to the estate on January 28, 1959, in which adjustments in the estate tax were proposed. The proposed adjustments resulted in a taxable estate of $47,030,057.93 and a total estate tax liability of $34,601,344.61. Respondent proposed the following adjustments, among others: ditional assets included in estate -
(1) Claim against H. L. Hunt for interest in New Mex- ico
$ 30,000.00
leases (1/2)
(2) Claim against H. L. Hunt for investment in Parade
437,500.00
Company
(3) Claim for 1/2 interest in Hunt Oil stock
35,349,639.00
(4) Claim for reimbursement for community funds used by H.
4,581,539.42
L. Hunt for his per- sonal benefit (represented by notes
[1] owed to bank) Liabilities of estate disallowed - Liability for notes
4,581,539.42
owed to bank
*140 The items involving the New Mexico leases and Parade Company were based upon petitioner's alleged investment of community funds in those ventures. Respondent took the position that the decedent either owned a half interest in the ventures, or had a claim for reimbursement for community funds invested in the ventures. The Parade Company was a joint venture, composed of petitioner, D. P. Hamilton, and Gladstone Gasoline Company, Inc., which owned and operated a casing-head gasoline plant in east Texas. The New Mexico leases were oil and gas leases which were purchased in petitioner's name with community funds prior to his first wife's death. These leases were in force and effect at the date of her death. The estate and Internal Revenue Service had reached agreement prior to issuance of 793 the 30-day *141 letter that the value of decedent's claim against petitioner for an interest in the New Mexico leases and an interest in Parade Company were includable in the estate at a total value of $467,500, and the estate paid the resulting deficiency in the amount of $205,638.82 on December 16, 1958. The other two items (and the disallowed liability) remained in controversy. There was an agreement between the estate and petitioner that the estate would pay petitioner one-half of all the costs and expenses incurred in the operation of the community properties. This arrangement was referred to in a letter dated August 12, 1957, from the executor to petitioner, which letter contained the following paragraph: This letter will confirm our oral agreement heretofore made that the Estate will pay to H. L. Hunt interest on any past due amounts owing to H. L. Hunt by the Estate under said agreement. Such interest shall be computed at the "bank prime rate" in effect at the time the interest accrues. There was an oral agreement between the estate and petitioner that interest would be calculated at the prime rate and charged on any outstanding amounts due and owing by the estate to petitioner or by *142 petitioner to the estate, and that petitioner would pay the estate any amounts which were finally determined to be owed by him to the estate. There was an amount owing to petitioner under the agreement for reimbursement for operating costs. Petitioner agree to pay the estate the amount which the estate and the Internal Revenue Service had settled upon as the value of the decedent's interest in, or claim with respect to, the New Mexico leases and Parade Company, less the amount which was due him by the estate. Petitioner also agreed to pay interest on this amount at the price rate of 4 percent from the date of his first wife's death to the date of payment. The amounts which the estate and the Internal Revenue Service agreed were the value of the decedent's interests in the New Mexico leases and Parade Company were recorded on the books of the estate in 1958 and petitioner, in March 1959, paid the estate $493,763.89, which represented full payment of the value of these interests including interest in the amount of $66,044.55. [2]
*143 Petitioner's books and records show the following accruals and payments to the estate relating to the value of the estate's interest in the New Mexico leases and Parade Company: Year
Account payable
Interest
Amount paid
recorded
accrued
Principal
Interest
1958
$ 30,000.00
$62,529.05
397,719.34
1959
3,515.50
$427,719.34
$66,044.55
$427,719.34
$66,044.55
$427,719.34
$66,044.55 The estate and the Internal Revenue Service reached a settlement on or about August 3, 1959, concerning the other items in controversy between them. This settlement was reached after 10 or 11 conferences had been held between representatives of the estate and respondent. Petitioner attended four of five of these conferences. A letter to the executor of the estate of Lyda Bunker Hunt from the Office of Regional Commissioner, Appellate Division, Internal Revenue Service, Dallas, Taxas, dated August 6, 1959, informed the executor that his offer of settlement made by execution of a "form 870 modified" had been accepted on behalf of the Commissioner and the fully executed copy of the form forwarded to his attorney. A schedule attached to this letter *144 showed the taxable estate as adjusted to be $7,269,371.40 and that the "Right of reimbursement as agreed". Was the amount of $4,787,911.09. The following statements appeared under "Explanation of Adjustments": 1. As agreed, the amount of $4,787,911.09 is included in the gross estate as the value of decedent's one-half of a community right of reimbursement from the separate property of the surviving husband, Mr. H. L. Hunt, or from his one-half of the community property. 2. The adjustment shown in the revenue agent's report which included $35,349,639.00 as decedent's interest in the Hunt Oil Co. is eliminated from the gross estate. 794 3. The adjustment to Schedule F of the estate tax return (Other Miscellaneous Property) which added $4,581,539.42 to the gross estate as "community reimbursement" is reversed * * *. 4. An additional deduction of $4,581,539.42 is allowed for decedent's share of liability for notes payable and interest accrued thereon. As part of the consideration of the settlement of the final estate tax liability of the estate of Lyda Bunker Hunt two collateral agreements were entered into on August 3, 1959. One agreement was between the Internal Revenue *145 Service and the executor of the estate and the individual beneficiaries and the other agreement was between petitioner and the Internal Revenue Service. Both agreements were drafted by a representative of the Internal Revenue Service and forwarded to representatives of the executor for obtaining appropriate execution by the designated persons. The two agreements contained substantially the same provisions. The agreement executed by petitioner reads as follows: In the event of acceptance, by or on behalf of the Commissioner of Internal Revenue, of a proposal of settlement of the estate tax liability of the Estate of Lyda Bunker Hunt on the basis of a revised estate tax liability in the sum of $4,034,841.12, which proposed settlement includes a provision that certain capital stock of Hunt Oil Company held in the name of the undersigned H. L. Hunt, surviving husband of the decedent, shall be recognized as separate property of the undersigned and not community property of the undersigned and his deceased wife and also includes a provision that recognizes a claim or right of the deceased wife at the time of her death for an accounting or reimbursement from the separate property of the *146 undersigned or from his share of the community property in a total amount of $4,787,911.09, and as a part of the consideration for such provisions in the proposed settlement which would affect him and his estate, the undersigned H. L. Hunt, binding himself, his heirs, estate and assigns, does hereby agree: (1) That the total value of any claim or claims which the decedent may have had at the time of her death against the separate property of the undersigned or his share of the community property of the decedent and the undersigned was not in excess of $4,787,911.09, the amount included as the value of such rights in computing the net value of her estate in the said proposed settlement of estate tax liability thereon; (2) That in the determination of liabilities of the undersigned, his heirs, estate or assigns for income tax, gift tax, estate tax or other Federal tax the Commissioner of Internal Revenue or the Internal Revenue Service may use such amount of $4,787,911.09 as the maximum amount of any claim or claims by the Estate of Lyda Bunker Hunt or by the beneficiaries of such estate based on such rights of the decedent, to the extent such amount or value may be a proper factor *147 in such determination under the applicable revenue laws; and (3) That this instrument may be introduced into evidence without objection by the undersigned, his heirs, estate or assigns as an admission against interest in any controversy affecting the Federal tax liabilities above mentioned. At the time that the estate of Lyda Bunker Hunt and the Internal Revenue Service reached agreement that the taxable estate should be increased by $4,787,911.09 to reflect the value of any claims which the decedent may have had against petitioner, it was also agreed between the estate and petitioner that he would pay that amount to the estate. Petitioner also agreed to pay the estate 4 percent interest from the date of his first wife's death to the time of the agreement and, thereafter, interest at the prime rate, until the amount was fully paid. In late July or early August 1959, the claim in the amount of $4,787,911.09 was entered on the books of both the estate and petitioner. Interest from the date of petitioner's first wife's death through the end of July 1959 at the rate of 4 percent amounted to approximately $809,000. By the end of the year 1959 accrued interest was $880,689.48. Petitioner's *148 books and records show the following accruals and payments to the estate and its successors relating to the $4,787,911.09 claim of the estate: Calendar Year
Accountpayable
Interest
Amount paid
recorded
accrued
Principal
Interest
1959
$4,787,911.09
$8,880,689.48
$ 1,325,000.00
1960
164,600.47
1961
135,349.35
951,351.90
670,639.50
1962
114,474.80
524,140.00
118,555.00
1963
96,563.17
498,992.00
106,477.00
1964
$ 76,741.91
$ 383,142.00
$ 78,311.00
1965
32,759.86
1,105.285.19
527,196.54
$4,787,911.09
$1,501,179.04
$4,787,911.09
$1,501,179.04 Petitioner directed a letter dated December 22, 1960, to the trustee of trusts for the benefit of the children of petitioner and Lyda Bunker Hunt, which trusts were the major beneficiaries of the estate of Lyda Bunker Hunt the body of which read as follows: This letter will confirm the oral agreement heretofore made between H. L. Hunt and the Estate of Lyda Bunker Hunt and now to be effective between H. L. Hunt and the above named Trusts concerning interest owed by H. L. Hunt on past due amounts arising from the settlement of the Estate of Lyda Bunker Hunt. H. *149 L. Hunt will pay to the Testamentary Trusts interest on any such past due amounts computed at the "bank prime rate" in effect at the time the interest accrues. The estate operated on a fiscal year ending April 30, and it reported the interest accrued on its books in connection with its $4,787,911.09 claimed against petitioner on its Federal income tax return for its year ended April 30, 1960. On his income tax return for the calendar year 1958, petitioner claimed an interest deduction of $62,529.05 for interest accrued to the estate of Lyda Bunker Hunt on the account payable recorded on his books in connection with the value of the estate's interest in the New Mexico leases and Parade Company. On his income tax return for the calendar year 1959 petitioner claimed an interest deduction of $884,204.98, which represented interest due the estate on the value of its interest in the New Mexico leases and Parade Company in the amount of $3,515.50 and interest on the $4,787,911.09 claim in the amount of $880,689.48. On his income tax return for the calendar year 1960, petitioner claimed an interest deduction of $164,600.47 for interest accrued on the $4,787,911.09 claim. During the *150 negotiations between the estate and the Internal Revenue Service concerning the estate tax liability of the estate of Lyda Bunker Hunt, there was no discussion of an interest element in connection with the decedent's claim against petitioner. Neither representatives of the estate or petitioner, nor petitioner personally, informed the Internal Revenue Service that petitioner would pay interest on the amount set forth in the collateral agreements as being the value at the time of decedent's death of her claim against petitioner's separate property and his share of the community property. The special assistant to the Chief, Appellate Division of the Internal Revenue Service, who conducted negotiations with representatives of the estate of Lyda Bunker Hunt and who prepared the collateral agreement for petitioner's signature, believed that the $4,787,911.09 agreed upon represented the value of an asset which should be included in the taxable estate. He did not consider such figure to represent an interest element. He did not regard the collateral agreements of either the estate or petitioner to forbid payment of interest. He did consider the collateral agreements to forbid the deduction *151 for income tax purposes of any interest should any be paid. Respondent in his notice of deficiency to petitioner for the years 1958, 1959, and 1960 disallowed deductions claimed for those years for interest accrued to the estate of Lyda Bunker Hunt in the respective amounts of $62,529.05, $884,204.98, and $164,600.47, with the explanation that the amounts deducted as interest paid or accrued to the estate of Lyda Bunker Hunt were not allowable deductions under the Internal Revenue laws. By amendment to his answer respondent alleged that petitioner "is. estopped to deny that for income tax purposes his liability to the Estate of Lyda Bunker Hunt both at the date of death of Mrs. Hunt and thereafter, was limited to $4,787,911.09 and the purported interest accrued thereon is not allowable as a deduction." Opinion Respondent's primary argument in that petitioner, by the agreement which he signed on August 3, 1959, in connection with the settlement of the estate tax liability of the estate of Lyda Bunker Hunt, is estopped from claiming interest deductions for interest accrued to the estate of Lyda Bunker Hunt 796 in any of the years here in issue. Respondent bases this contention *152 on the portion of the agreement which states: That in the determination of liabilities of the undersigned, his heirs, estate or assigns for income tax, gift tax, estate tax or other Federal tax the Commissioner of Internal Revenue or the Internal Revenue Service may use such amount of $4,787,911.09 as the maximum amount of any claim or claims by the Estate of Lyda Bunker Hunt or by the beneficiaries of such estate based on such rights of the decedent, to the extent such amount or value may be a proper factor in such determination under the applicable revenue laws; * * * It is respondent's position that by the use of the words, "as the maximum amount of any claim or claims by the Estate of Lyda Bunker Hunt," petitioner intended to and did agree that the Internal Revenue Service might properly disallow any deductions for any amount in excess of the stated amount which he might claim in computing any Federal tax and that since a payment of interest to the estate of Lyda Bunker Hunt was the payment of an amount in excess of the stated $4,787,911.09 claim, respondent is authorized under petitioner's agreement to disallow deductions claimed by petitioner on his Federal income tax returns *153 for the years 1958, 1959 and 1960 for interest paid to the estate of Lyda Bunker Hunt. Respondent asserts that the only way he can effectively enforce petitioner's agreement is by a plea of estoppel. The contention that petitioner is bound by his agreement in writing differs from the ordinary concept of estoppel. In Tide Water Oil Co., 29 B.T.A. 1208, 1219 (1934), we stated that, "Equity need not be invoked in order to hold one to the plain terms of his written agreement." Whether respondent's only effective method of enforcing an agreement such as the one here in issue, is by a plea of estoppel we need not decide since petitioners in their reply brief specifically recognize that they should be bound by petitioner's agreement signed in connection with the settlement of the estate tax liability of the estate of Lyda Bunker Hunt. As respondent in his brief points out, many legal theories such as equitable estoppel, quasi-estoppel, estoppel by agreement, election, or waiver, or the duty of consistency have been considered by the courts to be under varying circumstances a bar in the nature of estoppel in that it has been held that some fact or position in a particular *154 case could not be controverted by one of the parties because of some prior action of that party. See Laura Massaglia, 33 T.C. 379, 387 (1959), affirmed 286 F. 2d 258 (C.A. 10, 1963). We will, therefore, first consider whether we agree with respondent's interpretation of petitioner's agreement or petitioner's contention that the agreement did not preclude him from claiming deductions for interest accrued or paid to the estate of Lyda Bunker Hunt. The evidence shows that the interest with respect to the amount which petitioner agreed was owing to the estate in connection with the New Mexico leases and Parade Company was accrued on petitioner's books in 1958 and deducted by petitioner on his Federal income tax return for the year 1958, which return was filed on June 15, 1959 over 6 weeks prior to the date of the execution of the agreement on which respondent relies. Respondent does not explain, nor do we see, how the agreement could have any bearing on an action previously taken by petitioner. We do not interpret the agreement which petitioner signed on August 3, 1959, by its terms to specifically prohibit petitioner from either paying interest with respect *155 to the $4,787,911.09 claim of the estate of Lyda Bunker Hunt or claiming a deduction for such interest if properly accruable on his Federal income tax return for the year of the accrual of the interest. Interest is not specifically mentioned in the agreement. In the paragraph of the agreement numbered (1) the amount of $4,787,911.09 was stated to be "the total value of any claim or claims which the decedent may have had at the time of her death against the separate property of [the petitioner] or his share of the community property." We, therefore, interpret the words, "maximum amount of any claim or claims * * * based on such rights of the decedent," which respondent relies on to support his interpretation of petitioner's agreement, to mean that the $4,787,911.09 was the maximum amount of the claim or right of petitioner's deceased wife at the time of her death to reimbursement from petitioner's separate property or his share of the community properties. So interpreted, the question of whether or not petitioner is entitled to deduct any interest which he accrued to the estate with respect to the $4,787,911.09 claim would necessarily be governed by whether such 797 interest constituted *156 interest on indebtedness under section 163(a), I.R.C. 1954, and whether or not such interest was properly accrued by petitioner in the year for which the deduction is claimed. We consider the language of the agreement to be reasonably clear in referring to only the principal sum which may be considered the claim of the estate against the separate property of petitioner. However, the record shows that the agreement was actually drafted by a representative of the Internal Revenue Service. It would therefore follo0 that even if it 0ere ambiguous the ambiguity should be interpreted against the drafter. The record also shows that no mention was made of interest in discussing the settlement prior to the signing of the agreement by petitioner. Respondent further argues that if the contract in and of itself does not specifically estop petitioner from properly claiming deductions for interest accrued to the estate of Lyda Bunker Hunt, then the doctrine of equitable estoppel or alternatively "quasiestoppel" does preclude petitioner from asserting such claim. Respondent in his pleading alleged equitable estoppel only with respect to the $4,787,911.09 indebtedness. *157 It is incumbent upon respondent, if he relies on the defense of estoppel, to specifically plead the defense and the items to which the defense relates. El Dorado Oil Works, 46 B.T.A. 994, 998-999 (1942). Therefore, respondent's contention with respect to equitable estoppel and quasiestoppel does not apply to petitioner's claimed deduction for interest paid to the estate of Lyda Bunker Hunt for the year 1958. In United States v. S.F. Scott & Sons Inc., 69 F. 2d 728, 732 (C.A. 1, 1934), it was stated that: * * * To constitute estoppel (1) there must be false representation or wrongful misleading silence. (2) The error must originate in a statement of fact and not in an opinion or a statement of law. (3) The person claiming the benefits of estoppel must be ignorant of the true facts, and (4) be adversely affected by the acts or statements of the person against whom an estoppel is claimed. * * * These elements of equitable estoppel have been recognized in numerous cases. Respondent in the instant case contends that petitioner's failure to disclose that he had *158 an agreement with the estate of Lyda Bunker Hunt to pay interest was a "wrongful misleading silence. " Respondent argues that the agreement to pay interest with respect to which petitioner was silent is a fact of which respondent was ignorant when he accepted the settlement of the estate tax liability of the estate of Lyda Bunker Hunt and that he was adversely affected because he made a disposition of the estate tax liability of the estate of Lyda Bunker Hunt which he would not have made had he known of petitioner's agreement to pay interest. The record does not bear out respondent's contention. In the first place whether or not interest would be paid from the date of death of petitioner's former wife on an amount which the parties referred to as a claim or right of his deceased wife at the time of her death for reimbursement from his separate property should logically have occured to respondent's representatives as well as to petitioner's. Although petitioner did not mention his agreement to pay interest to respondent's representatives, neither did respondent's representatives mention the possible payment of such interest to petitioner. Under these circumstances we do not construe *159 petitioner's silence as wrongful or misleading. Since the plea of estoppel is an affirmative plea, it is incumbent on respondent to show the various elements and respondent has failed to show that he was in any way adversely affected by settling the tax liability of the estate of Lyda Bunker Hunt without knowledge that petitioner would accrue and pay interest to the estate on the amounts shown by his agreement to be due to the estate. As petitioner points out, the record does not show that respondent would have obtained a greater estate tax if the settlement had not been executed. From the fact that respondent was proposing to disallow to the estate as a debt an amount only approximately $200,000 less than the amount of reimbursements due the estate agreed to in the final settlement of the estate tax liability, it would appear that the deduction for interest on the liability may have been taken by the estate, and petitioner may have been deducting interest on only one-half of the amount of the bank note. We need not speculate on this matter because it would have been incumbent on respondent to show some detriment by handling the matter as a reimbursement due to the estate and not *160 a disallowance of a claimed indebtedness by the estate. Also the facts show that the estate accrued and reported on its Federal income tax return the interest which petitioner accrued and deducted. 798 This record falls far short of supporting a claim for equitable estoppel. Quasi-estoppel has been recognized in certain instances where honesty and good faith seem to require that a party be compelled to act in another year or in another matter consistent with his previous actions. The doctrine of "quasi-estoppel" has been stated to be supported by the following language in R.H. Stearns Co. v. United States, 291 U.S. 54, 57 (1934): The applicable principle is fundamental and unquestioned. "He who prevents a thing from being done may not avail himself of the nonperformance which he has himself occasioned, for the law says to him, in effect: 'This is your own act, and therefore you are not damnified.'" See McMillan v. United States, an unreported case ( S.D.W. Va., 1964, 14 A.F.T.R. 2d 5704). This doctrine was likewise recognized in Alamo National Bank v. Commissioner, 95 F. 2d 622 *161 (C.A. 5, 1938), affirming 36 B.T.A. 402 (1937). The various cases dealing with the duty of consistency or so-called "quasi-estoppel" all involve situations where the taxpayer has made a previous specific representation which he later seeks to deny, which representation had been accepted by respondent, until such time as respondent was barred from correcting the tax liability which would result from adjusting for the prior representation. Each of the cases to which our attention has been directed, except McMillan v. United States, supra, involved representations in prior years which were barred by the statute of limitations when the taxpayer in a subsequent year reversed his former position. The McMillan case involved heirs of an estate who were also executors of the estate. As executors they had agreed with the Government as to the valuation of certain stock in an estate which stock they inherited as heirs and later sold. The Court held their action as executors in agreeing with respondent on a valuation of the stock at the date of the decedent's death barred them under the theory of "duty of consistency" or "quasi-estoppel" from claiming a higher value at the date *162 of decedent's death in determining their gain on a subsequent sale of the stock. In its opinion the Court distinguished the case of Ford v. United States, 276 F. 2d 17 (Ct. Cls. 1960), which held that the heirs were not estopped from asserting a higher value of stock than the value agreed to by the executor of the estate from which they inherited the stock and the Internal Revenue Service where the heirs were not executors and had in no way participated in the valuation for estate tax purposes. In the instant case the doctrine, if it may be so called, of "duty of consistency" or "quasi-estoppel" is not applicable to petitioner for the same reason that equitable estoppel is inapplicable. As we have pointed out the cases dealing with these theories involve some affirmative representation on the part of the person estopped or a silence which amounts to misrepresentation. Here, petitioner made no affimative representation with respect to claiming a deduction for interest paid or accrued nor was his silence with respect to his intentions in this regard maintained under such circumstances as to amount to wrongful misrepresentation. Also for "duty of consistency" or "quasiestoppel" *163 to apply, there must be a showing made by respondent that because of the actions of the taxpayer respondent acted to his detriment. See Pancoast Hotel Co., 2 T.C. 362, 368-371 (1943). We, therefore, conclude that petitioner is not estopped from claiming interest deductions for interest accrued to the estate of Lyda Bunker Hunt if the amounts were properly accrued. Respondent in his brief states that "In the alternative, the petitioners may not accrue and deduct interest of $809,000.00 in 1959 which is largely attributable to the taxable years 1955, 1956, 1957 and 1958." We interpret respondent's statement in this regard to be a recognition of petitioner's right to the deductions claimed for interest accrued to the estate of Lyda Bunker Hunt in the years 1958 and 1960 if we do not agree with his argument that petitioner is estopped to claim these deductions and of petitioner's right to deduct interest in excess of $809,000 in the year 1959 if we do not agree with his estoppel argument. Respondent in his reply brief is not as precise in his statement of his position. However, in the reply brief, respondent makes no argument other than that of estoppel with respect to *164 the interest deduction claimed by petitioner for interest accrued to the estate of Lyda Bunker Hunt in the year 1958. Respondent states that the courts have uniformly held that a taxpayer on an accrual basis of accounting may not accrue expenses which he is denying or contesting and cites in support thereof Dixie 799 Pine Products Co. v. Commissioner, 320 U.S. 516 (1944); Security Flour Mills Co. v. Commissioner, 321 U.S. 281 (1944); and United States v. Texas Mexican Railway Co., 263 F. 2d 31 (C.A. 5, 1959). Respondent states that petitioner denied and contested the possibility that he owed anything to the estate of Lyda Bunker Hunt prior to August 3, 1959, when he signed the collateral agreement in connection with the settlement of the estate tax liability of the estate of Lyda Bunker Hunt. Respondent then states that the settlement of the estate tax liability of the estate of Lyda Bunker Hunt and the signing of the collateral agreement did not create a creditor-debtor relationship between the estate of Lyda Bunker Hunt and petitioner. It is respondent's position that the respondent merely determined the tax liability of the estate *165 of Lyda Bunker Hunt and that petitioner did not recognize any liability owing to the estate in writing prior to December 22, 1960. Respondent concludes by stating that the entire record in this case shows that petitioner and the estate of Lyda Bunker Hunt did not claim or agree that petitioner owed the estate anything prior to August 3, 1959. Respondent apparently concludes from his interpretation of the record in the case that there was no indebtedness of petitioner to the estate of Lyda Bunker Hunt until August 3, 1959 and therefore prior to that time nothing on which interest might be accrued. Respondent does not precisely state his argument in these words. However, he cites in support of this argument the case of Autenreith v. Commissioner, 115 F. 2d 856 (C.A. 3, 1940), affirming 41 B.T.A. 319 (1940), which held that interest could not be deducted on notes given by children to their mother which notes stated on their face that they were not to become payable unless there was a default in the interest since such notes did not represent an indebtedness. He also cites the case of Richmond Hosiery Mills v. United States, 305 F. 2d 840 (Ct. *166 Cls., 1962), which involved an issue of whether a corporation on an accrual basis might properly accrue in the year 1948 an excess profits tax deficiency for the years 1942 through 1945 which it paid in 1948 after signing a waiver of restriction on assessment qualified by a statement therein that the plaintiff did not admit that the deficiencies were correct and reserved the right to file and prosecute claims for refund. The Richmond Hosiery Mills case was primarily concerned with distinguishing certain cases holding that where an accrual basis taxpayer paid an amount which he had previously contested, the amount accrued when the payment was made, which holding had been reversed by the Supreme Court in Consolidated Edison Co. of N. Y. v. United States, 366 U.S. 380 (1961). Respondent in his reply brief takes a more specific position and contends that the evidence in this case does not show that the reimbursement due by petitioner to the estate of Lyda Bunker Hunt was a debt. Respondent argues that the liability arose because of a tortious act of petitioner in removing amounts from community property. From the facts which we have set forth, we conclude that at least *167 as early as 1958 there existed an agreement between petitioner and the executor of the estate of Lyda Bunker Hunt that petitioner would recognize as owing from him to the estate any amounts which were ultimately determined to be a proper reimbursement due by him to the estate as of the date of the death of Lyda Bunker Hunt. While he did not agree that he owed the estate the amount which the Internal Revenue Service took the position that he owed in proposing deficiencies in the estate tax liabilities of the estate of Lyda Bunker Hunt, he did recognize that there might exist a right of the estate of Lyda Bunker Hunt to reimbursement from his personal estate or his share of the community property for amounts of community funds which he had expended for his separate benefit. From the facts which we have outlined we conclude that in substance there existed a dispute between the estate of Lyda Bunker Hunt and petitioner as to the reimbursement, if any, due by petitioner to the estate. While the dispute was occasioned by a position taken by the Internal Revenue Service, it was no less a dispute between petitioner and the estate. The record shows that petitioner attended four or five conferences *168 in connection with the settlement of the estate tax liability of the estate of Lyda Bunker Hunt although he was neither a legal representative of the estate nor a beneficiary under the decedent's will. The reasonable inference from the record is that he attended these conferences to protect his interest and further his position with respect to the amount to be determined as a reimbursement due from him to the estate as of 800 the date of the death of Lyda Bunker Hunt. Having agreed to reimburse the estate with respect to the amount ultimately determined between the estate and the Internal Revenue Service to be due by him to the estate, he was contesting the amount which he owed to the estate by contending before the such amount to the estate or that he owed a lesser amount than the Internal Revenue Service asserted that he owed. The facts, show that he participated in effecting the settlement between the estate and the Internal Revenue Service and that in accordance with his agreement with the executor of the Estate of Lyda Bunker Hunt, immediately upon the settlement he recognized the amount determined to be a reimbursement due from him to the estate as of the date of the death *169 of Lyda Bunker Hunt as being due by him to the estate. He also accrued interest on the amount from the date of the death of Lyda Bunker Hunt in accordance with an agreement between him and the estate which had existed at least from 1957 that he would pay interest to the estate on any amounts due by him to the estate. We conclude from these facts that because of the uncertainty as to the amount due by petitioner to the estate of Lyda Bunker Hunt prior to August 3, 1959, it would have been improper for petitioner to accrue the amount prior to that date and that after August 3, 1959, when the estate tax liability of the estate of Lyda Bunker Hunt was settled, the amount was properly accruable by petitioner, since under his agreement at that time the amount which he owed to the estate became fixed. The cases are uniform that where a liability is contested so that the principal amount is not properly accruable, the interest likewise may not be accrued until the liability itself becomes fixed. In Lehigh Valley Railroad Co.12 T.C. 977, 1000 (1949), we held that the liability for state taxes which was being contested by the taxpayer accrued in the years when the litigation *170 terminated and that the same rule applies to interest on those taxes. The principle that interest does not accrue on a contingent obligation until the principal obligation becomes a sufficiently definite liability to be accrued has been recognized in a number of other cases. In some cases the view has been taken that a contingent obligation is not an indebtedness. See Guardian Investment Corporation v. Phinney, 253 F. 2d 326, 330-331 (C.A. 5, 1958), and cases there cited. If respondent is arguing that because in certain cases the courts have referred to a contingent liability as not being an "indebtedness" that no "indebtedness" of petitioner to the estate of Lyda Bunker Hunt existed until August 3, 1959, he does not specifically so state. However, the substance of certain or respondent's argument might be so interpreted. Such a concept is contrary to the underlying theory of the law of community property in the State of Texas. Whatever right the estate of Lyda Bunker Hunt had with respect to the property which was the community property which she and petitioner owned prior to her death came into being immediately upon the community being dissolved by her death. This *171 proposition has been recognized in numerous cases. See Burton v. Bell, 380 S.W. 2d 561, 565 (S. Ct. Tex., 1964, and cases there cited. Therefore, the right to reimbursement existed in the estate of Lyda Bunker Hunt from the date of her death in 1955 even though the obligation of petitioner to reimburse the estate did not become sufficiently fixed and definite to accrue until he agreed in 1959 to the precise amount due by him to the estate. See American Hotels Corporation v. Commissioner, 134 F. 2d 817 (C.A. 2, 1943), affirming 46 B.T.A. 629. Under Texas law, whether the right of the estate to reimbursement was in the nature of contract or of tort, interest would be due on the amount from the date the right arose. Texas Company v. State, 281 S.W. 2d 83 (S. Ct. Tex., 1955). In the the estate and petitioner as to interest. If respondent is contending that even though interest would be due on the amount under Texas law, the amount is not interest on "indebtedness" within the meaning of section 163(a), I.R.C. 1954, we consider his argument to be without merit. It appears to be respondent's position that *172 the amount due by petitioner to the estate was not an "indebtedness" under Texas law. Whether the technical designation of the right of the estate against petitioner under state law should control the right of petitioner to an interest deduction under section 163(a), I.R.C. 1954, or whether such a criterion is relevant to a determination of a taxpayer's right to a claimed interest deduction, we need not decide in this case. We conclude that the right of the estate to reimbursement from petitioner created a debt from petitioner to the estate under 801 the law of Texas. In Burton v. Bell, supra, the Court held that the right of reimbursement of a husband for community funds used by a wife to improve her individual property created a debt owed by the wife to the estate of her deceased husband, which debt arose at the date of her husband's death. The Court pointed out that there was a difference in such a right to reimbursement and the relationship which existed where a community estate was severed by the death of one party and the other took charge of the whole community estate and managed and reinvested the community estate as if it were the separate property *173 of the survivor. The Court in this regard stated (380 S.W. 2d 561,566): Plaintiffs rely upon such cases as Spencer v. Pettit (Comm. of App. 1931), 34 S.W. 2d 798; Born v. Bluestein (Tex. Civ. App., 1949, no writ history), 220 S.W. 2d 345; and Boettcher v. Means (Tex. Civ. App., 1947, no writ history), 201 S.W. 2d 255, as authority that after the death of Mr. Bell, Mrs. Helen Bell became a trustee of all of the community property, and therefore the four-year statute of limitations rather than two-year statute would be applicable. Those cases are not in point. Each of these were cases where the husband and wife owned community property and upon the death of one spouse, the other took charge of the whole community estate and managed and sold and reinvested such community estate as if it were the separate property of the survivor. We have no such case here. Mrs. Bell did not take charge of the community right to reimbursement. The property improved with community funds - granted they were community funds - was, and remained, Mrs. Bell's separate property with no title in Mr. Bell or his heirs, the plaintiffs. The right to reimbursement *174 was a claim for return of funds and upon Mr. Bell's death it passed to his heirs. Mrs. Bell has not managed, conveyed or changed the character of this right. She was not and is not a trustee of such claim for reimbursement. We consider this case to hold that under Texas law there does exist a debtor relationship where a deceased spouse has a right of reimbursement for funds used prior to the death of that spouse for the separate purposes of the other spouse. See also Howle v. Howle, 422 S.W. 2d 252 (Ct. Civ. App.Tex., 1967) where the right of reimbursement of "one estate" against the "other estate" of funds spent to enhance the value of the separate property of the estate is referred to as a "claim for money" and "return of funds." The estate of Lyda Bunker Hunt and petitioner considered the right of the estate to reimbursement to create a debt from petitioner to the estate although uncertainty existed with respect to the amount of the indebtedness. They agreed that interest on the amount finally determined to be due should be paid from the date of the death of Lyda Bunker Hunt. While the cases indicate that under the law of Texas interest would be due we would reach *175 the same result in this case whether or not the law would require interest on such a reimbursement if the claim to interest were contested. Even in the absence of a legal requirement that interest be paid, amounts agreed by the parties to be paid as interest are deductible unless the substance of the transaction requires the conclusion that the amount either as a matter of fact or of law is not interest. Our attention has been directed to no case that holds that interest on an indebtedness, agreed to by the parties to the transaction, is not interest and deductible as such merely because the parties have a family relationship. In fact, the cases are specifically to the contrary. See Vertex Investment Co., 47 B.T.A. 252 (1942), remanded by agreement of the parties, 32 A.F.T.R. 1750, (C.A. 9, 1943), and Erwin de Reitzes-Marienwert, 21 T.C. 846 (1954). We therefore conclude that petitioner is entitled to the deduction for interest accrued to the estate of Lyda Bunker Hunt for the years 1958, 1959, and 1960. Because of other adjustments in the notice of deficiency, Decision will be entered under Rule 50. Footnotes
1. The major portion of this item is shown by the record to represent one-half of $8,352,600, which respondent contended was borrowed on a purported community promissory note but withdrawn by petitioner from community assets of petitioner and Lyda Bunker Hunt one year before the death of Lyda Bunker Hunt for petitioner's personal use and not for the benefit of the community.↩
2. The estate and petitioner had previously recognized that petitioner owed the estate $52,103.83 in connection with the interest of petitioner's first wife in Parade Company.↩