## ALAMO NAT. BANK OF SAN ANTONIO v. COMMISSIONER OF INTERNAL REVENUE.*

### No. 8587.

Circuit Court of Appeals, Fifth Circuit.

March 28, 1938.

Robert Ash, of Washington, D. C., for petitioner.

S. Dee Hanson, Sewall Key, and J. M. Jones, Sp. Assts. to Atty. Gen., James W. Morris, Asst. Atty. Gen., and Ralph E. Smith, Apl. Atty., Bur. Int. Rev., of Washington, D. C., for respondent.

*Writ of certiorari denied 58 S.Ct. 1047, 82 L.Ed. ——.

Before FOSTER, SIBLEY, 'and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

Lewis W. Alexander, herein called the taxpayer, and his wife had identical cases before the Board of Tax Appeals. Both are to be controlled by this opinion.

The facts are stipulated, and in brief are these: Prior to March 1, 1913, the San Antonio Coca-Cola Bottling Company, owned wholly by the taxpayer and his wife, acquired an exclusive franchise to bottle and distribute Coca-Cola in certain counties of Texas. In 1921 the Company was dissolved, and the assets all taken over by taxpayer and his wife. Income as a liquidating dividend from the transaction was returned by them in an amount of $17,035.40, and taxes paid and accepted on that basis. The return showed that the income reported was arrived at by taking the "book value of the net assets of Company 12/31/21, $44,115.37" and deducting the capital stock $20,000, and the surplus as of March 1, 1913, $7,079.97, leaving $17,035.40 as the gain realized in liquidating. By reference to the Company's books and its statement of December 31, 1921, it now appears that the franchise above mentioned was not expressly included in the assets valued in arriving at their net of $44,115.37. The business was continued by the taxpayer and his wife as individuals under the same franchise until in September, 1931, the business was sold with its franchises and good will for $775,000. The tax returns for 1931 claimed that the cost basis for reckoning the gain then realized should be, not $17,035.40 as reported in the return of 1921, but should be increased by $216,560, the true value of the franchise in 1921 (less its March 1, 1913, value). The Commissioner held that since in the 1921 return no such value had been set up, and since correction of the 1921 tax could not now be had because of limitation, the taxpayers were estopped. If the 1921 return could be reopened and the increased value added, the increase in the 1921 tax would exceed the tax now in dispute. The Board of Tax Appeals first held there was no estoppel, but on reconsideration decided there was, and refused to go into the question of the value of the franchise in 1921. The latter decision is under review.

Taxation is a matter of statutes, and equitable considerations cannot over-

ride the provisions of the statutes, nor always supply their omissions. McEachern v. Rose, 302 U.S. 56, 58 S.Ct. 84, 82 L.Ed. ——. Nevertheless honesty, good faith, and consistency are due in tax accounting. The right and wrong of things and equitable principles have a place in tax matters. Stearns Co. v. United States, 291 U.S. 54, 54 S.Ct. 325, 78 L.Ed. 647; Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L. Ed. 1265. In income taxation what is done in one tax year is sometimes projected into another where the same fact must govern. There being continuity, there ought to be consistency in treatment. If, for instance, a sale is made on deferred payments, and the taxpayer returns it as an instalment sale,. charging himself only with the cash collection, and the Commissioner acquiesces, the taxpayer could not in later years refuse to pay on the deferred collections by asserting that he stated the facts wrongly in the first instance and ought to have paid on all then, unless he should offer to correct also the first tax settlement.* So if a taxpayer who acquired gain in an exchange of property sets up as its measure a value of what he received in which the Commissioner acquiesces, that value is the basis to be taken in measuring a further gain on a sale of the property in a later year. The taxpayer cannot say: "I was mistaken. The value was many times what I said it was. I therefore realized less gain on the last sale," without doing justice all· around in correcting his mistake. The reverse principle is also true if the Commissioner, in reviewing the return, should correct the first valuation and the taxpayer should acquiesce. The Commissioner could not repudiate his action when that value again became a determining factor. If taxpayer and Commissioner should disagree, and the dispute should be submitted to a competent tribunal, there results of course an adjudication. In adjusting values the Commissioner in effect represents the interests of all other taxpayers who must bear what the particular taxpayer unjustly escapes. It is no more right to allow a party to blow hot and cold as suits his interests in tax matters than in other relationships. Whether it be called estoppel, or a duty of consistency, or the fixing of a fact by agreement, the fact fixed for one year ought to remain fixed in all its consequences, unless a more just general settlement is proposed and can be effected. The law requires restoration ·as a condition of rescission, just as equity declares that one asking equitable aid must give effect to the equities of his opponent. When this taxpayer, who best knew what he received in 1921 and its value and for this reason was required to declare it under oath, fixed the value so as to show a present gain of only $17,035.40, and the Commissioner acquiesced, that value must stand as the correct basis when the same property was sold at a further gain in 1931. If there was a mistake in the first instance it ought not to be corrected unless corrected in all its bearings, and that is not offered by the taxpayer.

But it is urged that the franchise whose value is now put forward was not included in the valuation made in 1921, and nothing has been represented by the taxpayer or agreed upon with the Commissioner touching it. The contention is specious. The 1921 return did not value any separate items of property, but stated generally the net value of the assets liquidated and received as $44,115.37. That figure represented everything that was received which had value. The taxpayer well knew in 1921 that his Company had the franchise, and that he received it in the liquidation, and he could not have carried on the business without it. If, as appears from the books, it was not valued in the estimate, it must be that it was not then thought to have value. That is the effect

---

* McEachern v. ˙Rose, 302 U.S. 56, 58 S.Ct. 84, 82 L.Ed. ——, involved an installment sale which was truly returned in the year it was made. The taxpayer died in 1928, and both his administrator and the Commissioner overlooked the statute which ought then to have been applied to the remaining payments of the known installment sale. The court observed, 302 U.S. 56, at page 59, 58 S.Ct. 84, 85, 82 L.Ed. ——: "The failure of the government to assess the appropriate tax in 1928 is not shown to be attributable to the erroneous statements made in the returns for the later years." The Commissioner always knew the true facts. The court also said: "We may assume that, in the circumstances, equitable principles would preclude recovery in the absence of any statutory provision requiring a different result." The court found such a statutory provision relating to refunds. The present case involves no refund.

of the return of $44,115.37 as the net value of all that was received. Otherwise, it would be hard to reconcile with good faith the omission of an important and valuable asset now asserted to have been worth about five times more than all that was disclosed. We think the 1921 return is to be taken as covering the value of the liquidated assets as a whole, and that the value then fixed cannot be departed from unless on a general correction of all the results of the mistake, if mistake there was.

Judgment affirmed.

