**Achille F. FORD**
v.
**UNITED STATES.**

**Jeanne F. HARLOW**
v.
**UNITED STATES.**
Nos. 623–53, 624–53.

United States Court of Claims.
April 6, 1960.

Jones, Chief Judge, dissented in part; Littleton, Judge, dissented.

I. Herman Sher, New York City, for plaintiffs.

Eugene Emerson, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice for defendant. Lyle M. Turner and James P. Garland, Washington, D. C., were on the brief.

MADDEN, Judge.

These two cases involve similar facts and identical legal questions, and this opinion will dispose of both cases.

The plaintiffs are brother and sister. They severally sue to recover the amounts of alleged overpayments that were made by them in connection with their respective income taxes for the year 1947. At issue is the basis that should be used in computing the amount of the gain, if any, that was realized from the sale on July 15, 1947 of 1,530 shares of stock owned by each plaintiff in a Brazilian corporation that was engaged in the coffee trade. (As this corporation was located at Santos in the State of Sao Paulo, Brazil, it will usually be referred to hereafter in the opinion as "the Santos Company.") Each plaintiff received for his or her shares of stock in the Santos Company $129,474.10 in United States money and 2,425,050 Brazilian cruzeiros.

The 1,530 shares of stock in the Santos Company which each plaintiff sold on July 15, 1947 consisted of 255 shares of stock which the particular plaintiff had inherited from Achille Francis Israel, father of the plaintiffs, at the time of his death on January 18, 1939, and of 1,275 additional shares which each plaintiff received after January 18, 1939 by way of stock dividends on the 255 shares that had been inherited.

The statutory provision applicable to these cases as of July 15, 1947 was the portion of Section 113(a) of the Internal Revenue Code of 1939 (26 U.S.C., 1946 ed., 113(a)) which provided as follows:

"The basis of property shall be the cost of such property; except that—

\* \* \* \* \* \*

"(5) *Property transmitted at death.*

"If the property was acquired by bequest, devise, or inheritance, \* \* the basis shall be the fair market value of such property at the time of such acquisition. \* \* \* "

Achille Francis Israel was a citizen of the United States. He died on January 18, 1939 in the State of Sao Paulo, Brazil.

When their father died, the plaintiff Achille F. Ford was 15 years of age and the plaintiff Jeanne F. Harlow was 12 years of age. They resided at that time in the County of Santos, State of Sao Paulo, Brazil, with their mother, Lillian Norah Ford Israel.

At the time of his death, Achille Francis Israel owned (among other property) 510 shares of stock in the Santos Company. This stock had a par value of 1 conto (1,000 milreis) per share.

By operation of Brazilian law, the plaintiffs, as the only children of Achille Francis Israel, inherited from their father 255 shares of stock each in the Santos Company on January 18, 1939, the date of their father's death.

Tax on the inheritance by the plaintiffs from their father of the stock in the Santos Company was imposed by the State of Sao Paulo. Pursuant to the law of that State, the Second Civil Court of Santos appointed two officials to appraise the stock. In October 1939, these officials retroactively appraised the stock as of January 18, 1939 at its par value of 1 conto (1,000 milreis) per share.

Although the devolution of the 510 shares of stock in the Santos Company owned by Achille Francis Israel at the time of his death was governed by Brazilian law, he disposed of other property by means of a will. This will, after providing for the payment of all just debts and funeral expenses and giving the testator's personal and household effects to his widow, Lillian Norah Ford Israel, provided that all the rest and residue of the testator's estate should be placed in trust for the benefit of his widow and the plaintiffs. The City Bank Farmers Trust Company, a New York

corporation, and Leon Israel, brother of the testator and uncle of the plaintiffs, were named in the will as the executors of and trustees under the will.

On April 17, 1940, Leon Israel and the City Bank Farmers Trust Company filed the Federal estate tax return of the estate of Achille Francis Israel with the Collector of Internal Revenue at Newark, New Jersey. In the return, the 510 shares of stock in the Santos Company which had been owned by Achille Francis Israel were included at a value of $11,857.50. This amount was declared under oath to have been the fair market value of such stock on the date of Achille Francis Israel's death. It represented, for each share of stock the par value of 1 conto (1,000 milreis), converted to United States money at the rate of $23.25 per conto, or 2.325 cents per milreis. The return indicated that the Federal estate tax payable on the estate of Achille Francis Israel amounted to $439.61.

Under the date of April 6, 1943, the Commissioner of Internal Revenue sent a 90-day deficiency letter to the executors of the estate of Achille Francis Israel. This letter stated (among other things) that:

"You are advised that determination of the estate tax liability of the above-named estate discloses a deficiency of $52,221.61, as shown in the statement attached.

\*    \*    \*    \*    \*    \*

"Within 90 days \* \* \* you may file a petition with The Tax Court of the United States \* \* \* for a redetermination of the deficiency or deficiencies."

The statement accompanying this letter indicated that the deficiency was based in part upon an adjustment upward of the value of the stock in the Santos Company from $11,857.50 to $23,715. In this connection, the statement declared that:

"The values in Brazilian currency reported for these securities have been accepted; however, they have

been converted into U. S. currency at a rate of $46.50 per Conto in lieu of $23.25 as used in the return."

Within the 90-day period allowed for that purpose, a petition was filed with the Tax Court on behalf of the executors of the estate of Achille Francis Israel for a redetermination of the deficiency previously determined by the Commissioner of Internal Revenue. The only alleged error mentioned in the petition related to the inclusion by the Commissioner in the gross estate of a large sum of money representing the proceeds of certain life insurance policies. In the proceedings before the Tax Court, the executors did not complain at any time about the portion of the deficiency that resulted from the action of the Commissioner of Internal Revenue in adjusting upward the value of the stock in the Santos Company from $11,857.50 to $23,715. On the contrary, the executors expressly stated in a brief that was filed with the Tax Court that they did not question any of the valuation adjustments that had been made by the Commissioner.

The Tax Court held in favor of the executors of the estate of Achille Francis Israel with respect to the error complained of by them. As a result, the deficiency in the Federal estate tax was redetermined by the Tax Court to be $949.31, rather than $52,221.61, as previously determined by the Commissioner of Internal Revenue.

The deficiency of $949.31, as redetermined by the Tax Court, reflected (among other things) the action of the Commissioner of Internal Revenue in increasing the value of the 510 shares of stock in the Santos Company owned by Achille Francis Israel at the time of his death from $11,857.50, as declared by the executors, to $23,715.

As previously indicated, the 255 shares of stock in the Santos Company originally inherited by each of the plaintiffs on January 18, 1939 were increased by way of stock dividends to a total of 1,530 shares of stock during the period between January 18, 1939 and July 15,

1947. On the latter date, each plaintiff sold the 1,530 shares of stock owned by him or her for $129,474.10 in United States money and 2,425,050 Brazilian cruzeiros.

On or about March 15, 1948, each of the plaintiffs filed with the Collector of Internal Revenue at Hartford, Connecticut, a Federal income tax return for the calendar year 1947. There was included in each return, among the taxable income, the amount of $122,569.59 as a long-term capital gain by reason of the sale on July 15, 1947 of 1,530 shares of stock in the Santos Company. The amount of the long-term capital gain was computed by each plaintiff in the income tax return as follows:

Gross sales price ----------$258,948.20
Cost or other basis -------- 13,809.02

Gain ---------------------- 245,139.18
Gain taken into account ---- 122,569.59

On June 24, 1949, the plaintiffs separately filed with the Collector of Internal Revenue at Hartford, Connecticut, claims for refunds of amounts previously paid as income taxes for the year 1947. Each claim was based in part upon the contention that, in computing the amount of the gain realized from the sale of the stock in the Santos Company on July 15, 1947: (a) the claimant had erroneously included in the gross price of $258,-948.20 the 2,425,050 Brazilian cruzeiros that the claimant had received as partial compensation for the stock, converted to United States money at the official exchange rate of 18.73 cruzeiros to the dollar, whereas the Brazilian funds were blocked and had no fair market value in 1947; and (b) the claimant had erroneously stated the basis of the stock to be $13,809.02, whereas the 255 shares of stock which the claimant had inherited on January 18, 1939 had a fair market value on that date of not less than $165,-709.20, and the basis of all the shares sold by the claimant on July 15, 1947 was not less than that amount.

The actions of the Internal Revenue Service on the claims mentioned in the preceding paragraph were partially favorable. In connection with each claim, the Internal Revenue Service agreed to eliminate from the claimant's 1947 income the dollar value, as originally reported in the claimant's income tax return for 1947, of the blocked Brazilian currency which the claimant had received as partial compensation for the sale of the shares of stock in the Santos Company. However, the Internal Revenue Service rejected the portion of each claim which was based upon the contention that the basis of the shares of stock in the Santos Company sold by the claimant was in excess of the amount which the claimant received in United States money for such stock. On the contrary, the Internal Revenue Service held that the basis of such stock was actually $11,-857.50 (or one-half of the amount which the Commissioner of Internal Revenue in 1943 had found to be the value, for Federal estate tax purposes, of the total of 510 shares of stock in the Santos Company which Achille Francis Israel had owned at the time of his death).

Pursuant to the determinations mentioned in the preceding paragraph, the Internal Revenue Service separately notified the plaintiffs that it proposed to determine that overassessments amounting to $37,883.71 in the case of Achille F. Ford and $37,363.07 in the case of Jeanne F. Harlow had been made in connection with their respective income tax liabilities for 1947. The proposed overassessment in the case of Achille F. Ford was accepted by him on December 27, 1950; and the proposed overassessment in the case of Jeanne F. Harlow was accepted by her on January 8, 1951. Subsequently, the overassessment in the case of Achille F. Ford was increased by the Internal Revenue Service to $39,633.71, and the overassessment in the case of Jeanne F. Harlow was increased by the Internal Revenue Service to $38,613.07, and these amounts were refunded to the respective plaintiffs.

Thereafter, the present suits were filed in this court. In the litigation, the plaintiffs have presented evidence tending to

show that the actual fair market value of the 255 shares of stock in the Santos Company which each plaintiff inherited from Achille Francis Israel on January 18, 1939, was greater than $129,474.10 on that date. They contend, therefore, that the basis of the shares of stock which each of them sold on July 15, 1947 was greater than the amount which he or she received on that date in United States money from the sale of such stock, so that no taxable gain was realized from the sale.

The Government has introduced no evidence directly contradictory of the plaintiffs' evidence of the value of the stock at the time they inherited it from their father. It urges first that application of doctrines of estoppel, release, waiver or *res judicata* make the plaintiffs' evidence of actual value at the time in question irrelevant. It also urges, not very vigorously, that the plaintiffs' evidence is at least rendered doubtful by the fact that local appraisers in Brazil, at the time of the decedent's death, appraised the stock at only $23.25 per share; that the American executors used that figure in making the estate tax return; that the Santos Company was a closely held corporation, and the market value of a minority of the stock, such as the plaintiffs received, would or might have been uncertain.

■ Commissioner White of this court did not make a finding as to the value of the stock at the date of the decedent's death. He did not find it necessary to do so in order to decide the case, since he adopted, on the whole, the Government's contention that the value used in determining the amount of the estate tax was conclusive, and the actual value was irrelevant.

We are of the opinion that the plaintiffs have proved, by a preponderance of the evidence, the actual value of the stock at the time in question. As will appear, hereinafter, we regard that actual value as relevant, and do not accept the Government's argument that it is made irrelevant by one or another of the suggested doctrines of estoppel, waiver, etc.

As we have seen, the pertinent statute says that if property is received by inheritance, the fair market value of the property at the time of the inheritance is the basis from which gain or loss, for income tax purposes, is to be computed when the property is later sold by the heir. Applying this statutory provision to the fact that the stock was worth more at the time the plaintiffs inherited it than it was when they sold it, they owed no tax on the sale, and should receive the refund which they claim.

■ The Government, insisting that the naked language of the statute does not foreclose the question, urges not only the doctrines of estoppel, waiver, etc., but points to section 29.113(a) (5)–1(c) of Treasury Regulations 111 which says that in a situation such as the instant one,

> "the value of property as of the date of the death of the decedent as appraised for the purpose of the Federal estate tax * * * shall be deemed to be its fair market value at the time of acquisition."

We think that the quoted regulation cannot have been intended to do more than to make the appraised value prima facie evidence of actual value. We feel sure that the Government would not be willing to lose a substantial amount of income taxes due it under the statute, just because, some years before, an excessively high appraisal for estate tax purposes had been made. We think the application of the regulation, as well as the application of the doctrine of estoppel and related doctrines with an equitable flavor, must be proceeded with cautiously, and with a careful regard to the circumstances of the case.

The Commissioner of this court, in his recommended opinion denying recovery to the plaintiffs, and the Government in its brief and argument, rely heavily upon the case of Alamo National Bank v. Commissioner, 5 Cir., 95 F.2d 622, certiorari denied, 304 U.S. 577, 58 S.Ct. 1047, 82 L.Ed. 1541. In that case the taxpayers, husband and wife, in 1921 received an asset, an exclusive franchise to bottle

and distribute Coca Cola in a specified territory, in the liquidation of a corporation. In their income tax return for that year they did not attribute any value to the franchise. Ten years later they sold the business, including the franchise, for a large sum. In computing, for 1931 income tax purposes, their gain on the sale, they attributed a value of $216,560 to the franchise as of the date they acquired it in 1921, and added that sum to the cost basis of the business, thereby reducing their 1931 gain by that amount. The Board of Tax Appeals and the Circuit Court of Appeals held that they were bound by the value which they had placed upon the franchise in their 1921 return. The Circuit Court of Appeals said that honesty, good faith and consistency were required of taxpayers, and that those elements were lacking in the claim of the taxpayers in that case.

In the instant case the plaintiffs were, respectively, 15 and 12 years of age at the time of their father's death. They resided in Brazil and of course had no knowledge of what was being written in their father's estate tax return in the United States. It may further be noted that while the subject of the estate tax of the plaintiffs' father was under consideration in the Newark Division of the Internal Revenue Service, the executors of the estate furnished to that office a consolidated balance sheet of the Santos Company showing that its stock, as of December 31, 1938, had a net value of $536.64 per share. We are not advised as to why the Internal Revenue Service took no notice of that important information. The fact that it did not do so did not relieve the executors of the estate of the responsibility of taking notice of it, and correcting the valuation stated in the return which they had filed before that time.

We do not find, in the facts of the instant case, the necessary basis for an estoppel which would prevent the plaintiffs from claiming what the tax statutes say they are entitled to, viz., to use the value as of the date of their father's death in computing their gain on the later sale of the inherited stock.

Although the parties have not asked us to do so, we have considered whether the doctrine of recoupment should be applied in this case. The undervaluation of the shares in the inheritance tax situation saved the estate $38,730.03. The amount of refund to which the plaintiffs are entitled on their income tax here in suit is $56,893.35. If the doctrine of recoupment were applied, the underpayment in estate tax would be set off against the overpayment in income tax, and the plaintiffs could recover only the difference.

In the cases of Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421, and Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265, recoupment was permitted. In the Bull case the estate of a deceased partner received a share of the income from the partnership business for the balance of the year in which he died. The estate was assessed, and it paid, estate tax upon that money. In due course the Revenue Service decided that the money was taxable income to the estate and so assessed it. By that time the statute of limitations had run against a refund of the estate tax. The estate paid the income tax and sued for its refund, or, in the alternative, the recoupment of the estate tax which it had paid on the same money. The Supreme Court held that the money was income and had been properly assessed as such, but that the plaintiff was entitled to recoup the estate tax erroneously assessed and paid, although its recovery would otherwise have been barred by the statute of limitations.

In Stone v. White, supra, the sole income beneficiary of a testamentary trust did not include in her return the income which she received from the trust. The tax was assessed to the trustees, and was paid by them from the trust estate. After the statute of limitations had run against the collection of the tax from the beneficiary, the trustees sued to recover the tax paid by them. It was held that the tax was erroneously collected from the trustees, but that they could not re-

cover it because the Government could recoup against it the tax which the beneficiary should have paid but did not pay, and which could not now be recovered from her because recovery was barred by the statute of limitations.

There was language in the Bull and Stone decisions which indicated that the doctrine of recoupment might have a broad scope. Such an evolution did not, however, occur. In Rothensies v. Electric Storage Battery Company, 329 U.S. 296, at page 300, 67 S.Ct. 271, at page 272, 91 L.Ed. 296, the Court said of the Bull and Stone cases:

> "In both, the single transaction or taxable event had been subjected to two taxes on inconsistent legal theories, and what was mistakenly paid was recouped against what was correctly due. In Bull v. United States, the one taxable event was receipt by executors of a sum of money. An effort was made to tax it twice—once under the Income Tax Act as income to the estate after decedent's death and once under the Estate Tax Act as part of decedent's gross estate. This Court held that the amount of the tax collected on a wrong theory should be allowed in recoupment against an assessment under the correct theory. In Stone v. White, likewise, both the claim and recoupment involved a single taxable event, which was receipt by an estate of income for a period. The trustees had paid the income tax on it but this Court held it was taxable to the beneficiary. Assessment against the beneficiary had meanwhile become barred. Then the trustees sued for a refund, which would inure to the beneficiary. The Court treated the transaction as a whole and allowed recoupment of the tax which the beneficiary should have paid against the tax the Government should not have collected from the trustees. Whatever may have been said indicating a broader scope to the doctrine of recoupment, these facts are the only ones in which it

has been applied by this Court in tax cases."

The Court further stressed, 329 U.S. at page 301, 67 S.Ct. at page 273, the requirement that the two taxes in question be based upon the same transaction because otherwise there would be

> " * * * an income tax system under which there never would come a day of final settlement and which required both the taxpayer and the Government to stand ready forever and a day * * *."

The instant case comes fairly close to satisfying the recoupment standards of the Supreme Court. The value of the shares at the death of the plaintiffs' father was the basis of the estate tax. The shares were undervalued and too little estate tax was paid. The value of the shares at the time of the father's death was the factor, so far as this litigation is concerned, which determined the amount of the plaintiffs' taxable gain, and the amount of their tax. If the doctrine of recoupment were a flexible one, susceptible of expansion, it might well be applied in the instant case. But the teaching of Rothensies is that it is not a flexible doctrine, but a doctrine strictly limited, and limited for good reason.

Each of the plaintiffs is entitled to a judgment for $28,446.67, and interest as provided by law.

It is so ordered.

LARAMORE and WHITAKER, Judges, concur.

JONES, Chief Judge (concurring in part and dissenting in part).

I agree that plaintiffs are entitled to recover, but since the estate, of which the plaintiffs were the sole beneficiaries, received the benefit of the lower estate taxes, the defendant should in simple justice be allowed to recoup and offset against any recovery the amount by which the estate benefited taxwise by the earlier valuation of the estate below its actual value.

The correction is being made at the instance of plaintiffs. It seems fair that

as a condition to the change in valuation, they should be willing to surrender the advantage which had come to them by reason of the undervaluation they are seeking to change.

LITTLETON, Judge (Retired) (dissenting).

I am of the opinion from all the facts and circumstances of these cases that plaintiffs should be held bound by the valuation of the stock in question placed thereon by the executors of the estate of A. F. Israel at the time of his death for estate tax purposes, in determining the profit upon a subsequent sale thereof by the residuary legatees of said estate. I think the plaintiffs should be held to be estopped to ignore such valuation which inured materially to their benefit and seek a higher valuation upon a subsequent sale thereof by them. It is true that they were minors at the time of the original valuation in the making of the estate tax return but the executors were acting for and on their behalf. I therefore agree with the opinion of Commissioner White of this court and adopt the same as a part of this dissenting opinion as follows:

I believe that the correct principles governing the disposition of these cases were stated in Alamo National Bank v. Commissioner of Internal Revenue, 5 Cir., 1938, 95 F.2d 622, certiorari denied 304 U.S. 577, 58 S.Ct. 1047, 82 L.Ed. 1541. In that case, a company that was wholly owned by Lewis W. Alexander and his wife acquired prior to March 1, 1913 an exclusive franchise to bottle and distribute Coca Cola in certain Texas counties. In 1921, the company was dissolved and the assets were all taken over by the Alexanders. Income in the amount of $17,035.40 as a liquidating dividend from the transaction was returned by them in 1921 for Federal income tax purposes, and taxes were paid and accepted on that basis. No value was assigned to the franchise in the computation with respect to the gain in the amount of $17,035.40. The business was continued by the Alexanders, under the same franchise pre-viously mentioned, until September 1931, when the business was sold for $775,000. In computing, for 1931 Federal income tax purposes, the amount of the gain realized by them from the sale of the business, the Alexanders took the position that there should be included in the cost basis the amount of $216,560 as representing the true value of the franchise in 1921. The Board of Tax Appeals held that the Alexanders were estopped to assert the higher valuation, and the Board's decision was subsequently reviewed by the United States Circuit Court of Appeals for the Fifth Circuit. In affirming the decision of the Board of Tax Appeals, the court said (95 F.2d at page 623):

"* * * [H]onesty, good faith, and consistency are due in tax accounting. The right and wrong of things and equitable principles have a place in tax matters. * * * In income taxation what is done in one tax year is sometimes projected into another where the same fact must govern. There being continuity, there ought to be consistency in treatment. * * * So if a taxpayer who acquired gain in an exchange of property sets up as its measure a value of what he received in which the Commissioner acquiesces, that value is the basis to be taken in measuring a further gain on a sale of the property in a later year. The taxpayer cannot say: "I was mistaken. The value was many times what I said it was. I therefore realized less gain on the last sale," without doing justice all around in correcting his mistake. The reverse principle is also true if the Commissioner, in reviewing the return, should correct the first valuation and the taxpayer should acquiesce. The Commissioner could not repudiate his action when that value again became a determining factor. * * * It is no more right to allow a party to blow hot and cold as suits his interests in tax matters than in other relationships. Whether it be called es-

toppel, or a duty of consistency, or the fixing of a fact by agreement, the fact fixed for one year ought to remain fixed in all its consequences, unless a more just general settlement is proposed and can be effected. The law requires restoration as a condition of rescission, just as equity declares that one asking equitable aid must give effect to the equities of his opponent. When this taxpayer, who best knew what he received in 1921 and its value and for this reason was required to declare it under oath, fixed the value so as to show a present gain of only $17,035.40, and the Commissioner acquiesced, that value must stand as the correct basis when the same property was sold at a further gain in 1931. If there was a mistake in the first instance it ought not to be corrected unless corrected in all its bearings, and that is not offered by the taxpayer."

In the proceedings before the Commissioner of Internal Revenue with respect to the Federal estate tax on the estate of Achille Francis Israel, the Commissioner accepted the valuation in Brazilian money (1,000 milreis per share) that was reported by the executors under oath as the fair market value of the stock in the Santos Company owned by the decedent. While it is true that the Commissioner determined that the exchange rate of 4.65 cents per milreis should be used in computing the United States dollar value of the stock, rather than the exchange rate of 2.325 cents per milreis used by the executors in their estate tax return, this adjustment was not objected to by the executors either before the Commissioner or before the Tax Court, when the executors sought a review by the Tax Court of another action taken by the Commissioner. The decision of the Tax Court respecting the amount of the estate tax liability reflected the valuation placed by the executors on the stock in the Santos Company owned by the decedent, as adjusted by the Commissioner of Internal Revenue with regard to the exchange rate.

The executors of the estate of Achille Francis Israel should have been, and presumably were, the persons best qualified to know the fair market value of the shares of stock in the Santos Company that were included in the estate. Since their representations under oath on this point were accepted by the United States in determining the amount of the Federal estate tax, it is my opinion that the valuation of the stock fixed in the estate tax proceedings should be regarded as the proper basis of the stock for the purposes of the present litigation, particularly since the amount of the Federal estate tax cannot now be adjusted upward if the executors undervalued the stock for estate tax purposes.

It is true that the plaintiffs were minors at the time and did not take any part in the representations that were made by the executors of their father's estate respecting the value of the stock in the Santos Company. However, the plaintiffs, as residuary legatees under their father's will, directly benefited from the action of the executors if—as the plaintiffs now contend—the executors undervalued the stock in the Santos Company for estate tax purposes; and I believe, therefore, that the plaintiffs are bound by the executors' action in this respect.

For the reasons stated above, it is my opinion that the plaintiffs are not entitled to recover, and that their petitions should be dismissed.

In any event, even if the plaintiffs are not bound by the valuation of the stock by the executors as of the date of the death of A. F. Israel, I am of the opinion that in justice, equity and fair dealing the Government should recoup from the recovery allowed these plaintiffs the amount of the estate tax underpaid by reason of the action of the executors in very materially undervaluing this stock as of the date of the death of A. F. Israel for whose estate they were charged with making a correct valuation and return under oath of the property of said estate, and on this point I therefore concur in the opinion of Chief Judge JONES.