Guy L. MANN, Deceased, Estate of Suzanne Mann Duval, Administratrix, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. CA 3–79–0136–R.

United States District Court, N.D. Texas, Dallas Division.

Aug. 31, 1982.

Robert Edwin Davis, Charles M. Meadows, Jr., Charles D. Pulman, Durant, Mankoff, Davis, Wolens & Francis, Dallas, Tex., for plaintiff.

Louise Hytken, Dept. of Justice, Tax Div., Dallas, Tex., for defendant.

## MEMORANDUM OPINION

BUCHMEYER, District Judge.

This case involves an attempt by the government to offset a claim for additional estate tax which is barred by limitations against the amount recovered by the taxpayer in an income tax refund suit. One issue is presented:

> Is the amount recovered by an estate in a successful income tax refund suit subject to offset—under the doctrine of "equitable recoupment"[1]—by the amount of additional estate tax which, although now barred by limitations, would have been due if the value of the claim for tax refund had been included as an asset for estate tax purposes?

Equitable recoupment is not proper under these circumstances. This doctrine must be given "limited scope," and does not apply in this case because there is not a "single

---

1. *Rothensies v. Electric Storage Battery Co.*, 329 U.S. 296, 67 S.Ct. 271, 91 L.Ed. 296 (1946); *Stone v. United States*, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265 (1937); *Bull v. United States*, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935).

transaction or taxable event" that has been "subjected to two taxes on inconsistent legal theories." *Rothensies v. Electric Storage Battery Co.,* 329 U.S. 296, 299–300, 67 S.Ct. 271, 272, 91 L.Ed. 296 (1946). Therefore, the income tax refund recovered by the taxpayer cannot be offset by the estate tax deficiency which is admittedly barred by limitations.

*The Procedural Setting*

Plaintiff Suzanne Mann Duval, Administratrix of the Estate of Guy L. Mann, Deceased, filed this suit to recover a refund of approximately $1.5 million in income taxes paid by the decedent. Specifically, she contended that Guy Mann made loans during his life to his brother and his nephew (Gerald C. Mann, Sr. and Jr.) and to three corporations with which they were associated (Diversa, Inwood Securities, and Murmanill Corporation); that these loans were connected to Guy Mann's business as a "promoter or broker"; that the loans were not repaid and became worthless in the year 1971; and that, consequently, Guy Mann was entitled to a business bad debt deduction in the amount of $2,111,902.60, which could be "carried back," under § 172 of the Internal Revenue Code, to generate a refund for the year 1968 of approximately $1.5 million in taxes and interest.

Defendant, the United States of America, contended that Guy Mann did not make true loans to his brother, his nephew and the corporations in the amounts claimed; that any advances by Guy Mann were either gifts or capital contributions; that these advances were not connected with Guy Mann's business activities, and were therefore non-business loans; and that, in any event, the advances by Guy Mann did not become worthless in 1971.

In addition, the government raised the affirmative defense of "equitable recoup-

ment." Specifically, it claimed that under this doctrine the government was entitled to offset, against any income tax refund recovered by plaintiff, the amount of additional estate taxes which would have been due if the claim for refund had been included as an asset in the federal estate tax return—even though assessment of an estate tax deficiency was admittedly barred by limitations.

Upon the plaintiff's motion, separate trials were ordered for the plaintiff's refund claim and the government's attempt to offset by recoupment. Fed.R.Civ.P. 42(b).[2] The trial of the plaintiff's refund claim resulted in a jury verdict that the loans by Guy Mann were business debts and that they became wholly worthless in 1971. Mann's estate was thus entitled to the business bad debt deduction claimed for 1971; upon application of the net operating loss carryback provisions of the Internal Revenue Code, these findings entitled the plaintiff to an income tax refund for the year 1968 of approximately $1.5 million.

By motion for judgment n.o.v. the government renewed its arguments—presented earlier by unsuccessful motions for summary judgment and directed verdict[3]—that there was no evidence (i) to show a business motivation for the loans, or (ii) to establish that 1971 was the year of worthlessness. This motion was denied because the evidence did support the jury's findings. Then, by agreement of the parties, the only remaining issue—the government's "equitable recoupment" claim—was presented for disposition by the plaintiff's motion for summary judgment. Under the undisputed facts and the authorities discussed below, the doctrine of "equitable recoupment" is not applicable in this case, and the plaintiff is entitled to judgment as a matter of law. Fed.R.Civ.P. 56.

2. Had these issues been tried together, the government would have contended that the claim for refund was baseless for purposes of the plaintiff's income tax refund case—but that it was extremely valuable for estate tax purposes and the recoupment claim. The plaintiff would have been forced to make the same inconsistent, but reversed, arguments. Accord-

ingly, the trial of both issues at the same time would have been confusing to the jury and prejudicial to both parties. *See United States v. Simmons,* 346 F.2d 213 (5th Cir.1965).

3. The rulings on these motions were made orally, and the transcripts containing them will be part of the record on appeal.

*The Facts*

The facts concerning the equitable recoupment claim are undisputed:

Guy Mann died on November 15, 1973, and Suzanne Mann Duval, his daughter, was appointed permanent administratrix of the Estate on September 26, 1974. The estate tax return was filed on April 15, 1975. At that time, the claim for refund of income taxes had not been filed and, consequently, the estate tax return did not include the claim for refund as an asset of the estate. On January 10, 1978, almost three years later, the plaintiff timely filed the claim for refund. It was denied, and this suit was filed on February 6, 1979.

However, the ordinary statute of limitations[4] for the government's assessment of an estate tax deficiency expired on April 15, 1978—some three months after the plaintiff's *claim* for refund was filed. Accordingly, by amended answer on April 12, 1979, the government raised, as an affirmative defense, the "equitable recoupment of the estate taxes owing to the United States due to the estate's failure to include the income tax claims as assets of the estate."

The jury verdict entitled the plaintiff to recovery of approximately $1.5 million. Of this, about $1 million represents the amount of tax and interest recoverable as of November 15, 1973, the day Guy Mann died. The parties have stipulated that the value of the claim for refund on the date of Mann's death was $346,876.33.

The government contends that, although the assessment of an estate tax deficiency on this amount is barred by limitations, it is—under the doctrine of equitable recoupment—entitled to recover the deficiency by way of offset against the refund of income taxes due the plaintiff. The plaintiff responds that the doctrine of equitable recoupment is to be narrowly construed, and that the government is not entitled to recoupment in this case because the claims of both parties are not based on a "single

transaction or taxable event." The government argues that such a narrow construction of the doctrine is not required, and that the "interdependency" of the two claims is sufficient to satisfy the "single transaction" test, so that "a $1,000,000 asset of the estate [will not] entirely escape estate taxes." The plaintiff also contends that, as a matter of law, §§ 6401(a) and 6514(b) of the Internal Revenue Code preclude the government from offsetting its time-barred claim against the plaintiff's refund.

*The Doctrine of Equitable Recoupment*

A doctrine known as "equitable recoupment" has been utilized in tax cases to allow one party to recover a time-barred claim by offsetting it against an amount owed to the other party. It is based upon the concept that "one taxable event should not be taxed twice, once on a correct theory and once on an incorrect theory ... and that to avoid this happening the statute of limitations will be waived." *Minskoff v. United States,* 490 F.2d 1283, 1285 (6th Cir. 1974). To determine whether the doctrine applies in this case requires examination of three opinions by the United States Supreme Court and of subsequent lower court decisions.

The doctrine of equitable recoupment was first applied in *Bull v. United States,* 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935). There, the government initially determined that the decedent's interest in a partnership was corpus of his estate and collected an estate tax on this interest. Then, five years later, the government determined that a portion of the same partnership interest was income to the estate and collected an income tax deficiency. In a refund suit brought by the estate, the Supreme Court held (i) that the partnership interest was properly taxed as income to the estate, but (ii) that the government had erroneously collected estate tax on the same item. Although the plaintiff was barred by limitations from recovering the overpaid es-

4. Normally, the government has three years from the date an estate tax return is filed in which to assess an estate tax deficiency. I.R.C. § 6501(a). However, this period is extended to six years if items in excess of 25% of the gross estate are omitted from the estate tax return. I.R.C. § 6501(e)(2).

tate tax, the Court held that—under the doctrine of equitable recoupment[5]—the plaintiff was entitled to offset the overpayment of estate tax on the partnership interest against the income tax deficiency on the same partnership interest. The Court described the doctrine of equitable recoupment as a "defense arising out of some feature of the transaction upon which the plaintiff's action is grounded" and held that "such a defense is never barred by the statute of limitations so long as the main action itself is timely" (295 U.S. at 262, 55 S.Ct. at 700).

Next, in *Stone v. White,* 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265 (1937), the government was permitted to invoke equitable recoupment as the taxpayer had done in *Bull.* A trust had paid income taxes on trust income; subsequently, the Supreme Court held that in these circumstances the sole beneficiary, rather than the trust, was liable for the taxes. The trust then filed a suit for refund—but only after the government was barred by limitations from assessing the tax against the sole beneficiary. Noting that any recovery by the trust would be for the benefit of the sole beneficiary, the Court held that the doctrine of equitable recoupment entitled the government to recoup "the tax which the beneficiary should have paid against the tax which the government should not have collected from the trust" (*Rothensies,* 329 U.S. at 300, 67 S.Ct. at 272–73).

Language in the *Bull* and *Stone* decisions indicated that the doctrine of equitable recoupment *might* have a broad scope.[6] But these decisions were sharply limited in the third (and last) equitable recoupment case considered by the Supreme Court: *Rothensies v. Electric Storage Battery Co.,* 329 U.S. 296, 67 S.Ct. 271, 91 L.Ed. 296 (1946).

There, the taxpayer had erroneously paid excise taxes for seven years, 1919–1926. When the error was discovered, limitations barred recovery of the taxes paid for the years 1919–1921—but in 1935 the taxpayer received a refund of the excise taxes paid for the 1922–1926 period. Because the taxpayer had taken deductions for the excise tax payments, the government treated this refund as income to the taxpayer in 1935 and assessed additional income taxes against him. In a suit for a refund, the trial court held that—under the doctrine of equitable recoupment—the taxpayer was entitled to offset the additional income taxes by the amount of excise taxes erroneously paid in 1919–1921, although any claim for refund of those taxes was barred by limitations. The Supreme Court reversed and denied equitable recoupment. Rejecting the view that this doctrine was based on "concepts of fairness applied *when necessary* to avoid inequities," the court emphasized "the limited scope given to recoupment in tax litigation"—and expressly declined to expand the doctrine beyond the facts of *Bull* and *Stone:*

> "In both cases, a single transaction constituted the taxable event claimed upon and the one considered in recoupment. In both, the single transaction or taxable event had been subjected to two taxes on inconsistent legal theories, and what was mistakenly paid was recouped against what was correctly due.... Whatever may have been said indicating a broader scope to the doctrine of recoupment, these facts [in *Bull* and *Stone*] are the only ones in which it has been applied by this Court in tax cases." (329 U.S. at 299–300, 67 S.Ct. at 272.)

In *Rothensies,* the Supreme Court was very concerned that expansion of equitable

---

**5.** The term "equitable recoupment" is not used, as such, in *Bull v. United States.* It first appears in the second Supreme Court decision, *Stone v. White,* 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265 (1937).

**6.** "The action, brought to recover a tax erroneously paid, although an action at law, is equitable in its function. It is the lineal successor of the common law count in *indebitatus assump-*

*sit* for *money had and received....* Its use to recover upon rights equitable in nature to avoid unjust enrichment by the defendant at the expense of the plaintiff, and its control in every case by equitable principles, established by Lord Mansfield in *Moses v. Macferlan,* 2 Burr. 1005 (K.B.1750), have long been recognized in this Court ..." (*Stone,* 301 U.S. at 534, 57 S.Ct. at 852).

recoupment would result in encroachments upon statutes of limitations in tax matters. The Court emphasized that the "reason and the character of such limitation statutes" also rest upon concepts of fairness because they "are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." (329 U.S. at 301, 67 S.Ct. at 273, quoting *Order of Railroad Telegraphers v. Railway Express Agency,* 321 U.S. 342, 348–49, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944)). It concluded that these statutes would be seriously undermined if the doctrine of equitable recoupment was broadened to allow relief from the hardships which sometimes result from the operation of limitations in individual cases:

> "As statutes of limitation are applied in the field of taxation, the taxpayer sometimes gets advantages and at other times the Government gets them. Both hardships to the taxpayers and losses to the revenues may be pointed out. They tempt the equity-minded judge to seek for ways of relief in individual cases.

> "But if we should approve a doctrine of recoupment of the breadth here applied we would seriously undermine the statute of limitations in tax matters. . . . Every assessment of deficiency and each claim for refund would invite a search of the taxpayer's entire tax history for items to recoup. . . .

> "We cannot approve such encroachments on the policy of the statute out of

consideration for a taxpayer who for many years failed to file or prosecute its refund claim. If there are to be exceptions to the statute of limitations, it is for Congress rather than for the courts to create and limit them." (329 U.S. at 302–03, 67 S.Ct. at 274.)

Accordingly, under *Rothensies,* if "unfairness" is to be considered, it is the unfairness of requiring a party to litigate a time-barred claim, rather than the unfairness which results to the party claiming recoupment if the claim is denied (329 U.S. at 302–03, 67 S.Ct. at 274).

Following *Rothensies,* a number of tax cases have applied the doctrine of equitable recoupment.[7] Although most courts have applied the "single transaction test" in allowing or denying recoupment, the decisions have not been uniform—either in their determination of what constitutes a "single transaction" or in their determination of whether the single transaction "has been subjected to two taxes on inconsistent legal theories." Indeed, the arguments presented by the parties in this case demonstrate the inconsistencies in the lower court decisions after *Rothensies* (329 U.S. at 299–300, 67 S.Ct. at 272).

The government argues that "the cases" do not require the recoupment claim to be based *directly* on the transaction on which the plaintiff's claim is based. It relies on *United States v. Herring,* 240 F.2d 225 (4th Cir.1957), in support of the contention that, in this case, the plaintiff's claim of a bad debt deduction is "a single taxable event underlying both the refund and recoupment

---

7. *Wilmington Trust Co. v. United States,* 610 F.2d 703, 221 Ct.Cl. 686 (1979) (recoupment denied taxpayer); *Davis v. United States,* 77–1 U.S.T.C. ¶ 13,195 (N.D.Tex.1977) (recoupment granted government); *Minskoff v. United States,* 490 F.2d 1283 (2d Cir.1974) (recoupment denied taxpayer); *Kramer v. United States,* 406 F.2d 1363 (Ct.Cl.1969) (recoupment denied government); *Missouri Public Service Co. v. United States,* 245 F.Supp. 954 (W.D.Mo. 1965), aff'd, 370 F.2d 971 (8th Cir.1967) (recoupment denied government); *Kojes v. United States,* 241 F.Supp. 762 (E.D.N.Y.1965) (recoupment denied taxpayer); *Boyle v. United States,* 355 F.2d 233 (3d Cir.1965) (recoupment granted taxpayer); *United States v. Bowcut,*

287 F.2d 654 (9th Cir.1961) (recoupment granted taxpayer); *Ford v. United States,* 276 F.2d 17, 149 Ct.Cl. 558 (1960) (recoupment denied government); *National Biscuit Co. v. United States,* 156 F.Supp. 916, 140 Ct.Cl. 443 (1957) (recoupment granted government); *E.I. DuPont DeNemours & Co. v. United States,* 147 F.Supp. 486, 137 Ct.Cl. 191 (1957) (recoupment granted government); *Pond's Extract Co. v. United States,* 134 F.Supp. 476, 133 Ct.Cl. 43, (1955) (recoupment granted taxpayer); *United States v. Herring,* 240 F.2d 225 (4th Cir.1957) (recoupment granted taxpayer); *Wood v. United States,* 213 F.2d 660 (2d Cir.1954) (recoupment denied government).

claims."[8] In *Herring,* the Fourth Circuit allowed an estate to offset an overpayment of estate taxes against an income tax deficiency paid by the estate after the decedent's death, where refund of the estate tax was barred by limitation. The court compared the *Herring* facts to those of *Bull* and stated:

> "We see no substantial distinction between the *Bull* case and the case now before us in this respect. In both the Government has received monies which in equity and good conscience belong to the taxpayer, and in both the allowance of recoupment should be made to avoid the bar of the statutes of limitations." (240 F.2d at 228.)

The court found that, "in practical effect," the claim of recoupment and the claim of refund grew out of the same transaction because it was impossible to determine the amount of estate tax due without making due allowance for the deduction caused by the payment of the income tax deficiency— and stated that the equities weighed in favor of recoupment because the statute of limitation for the taxpayer's claim for refund of estate tax had expired before the government had assessed the income tax deficiency.

However, the plaintiff argues that *Herring* is inconsistent with the *Rothensies* holding that limited scope must be given to the doctrine of equitable recoupment—as well as other decisions which, following *Rothensies,* hold that equitable recoupment does not apply unless "a single transaction or taxable event has been subjected to two taxes on inconsistent legal theories."[9] She relies upon *Wilmington Trust Co. v. United States,* 610 F.2d 703 (Ct.Cl.1979) and *Ford v. United States,* 276 F.2d 17, 149 Ct.Cl. 558 (1960).

In *Wilmington Trust,* as in this case, two estates which won an income tax refund suit were faced with equitable recoupment claims. The government had assessed income tax deficiencies against the taxpayers after their death on the theory that expenses of their timber operations could be deducted only from capital gains, not from ordinary income. The estates paid the deficiencies; deducted them from the decedents' gross estates, thus reducing estate taxes; and then filed suit for income tax refunds. When the court held that the estates were due tax refunds because the timber expenses were deductible from ordinary income, limitations barred the collection of additional estate taxes—so the government contended that equitable recoupment permitted it to offset the "additional estate taxes out of the plaintiff's income tax recoveries." After emphasizing "the teaching of *Rothensies*" that equitable recoupment "is not a flexible doctrine, but a doctrine strictly limited, and limited for good reason," the court denied equitable recoupment:

> "Under the 'limited scope' of 'recoupment in tax litigation' (*Rothensies, supra*), the government is not entitled to recoup the time-barred estate tax deficiencies from the income tax refunds due the plaintiffs. The two claims do not arise out of the same transaction.
>
> "The income tax refund is based upon the deductibility from ordinary income of the timber operations expenses. The estate tax deficiency, however, exists because the estate deducted the additional income taxes reflecting those expenses that it paid and now is recovering. The recoupment claim thus arises from a different transaction (the reduced deduction from the estate tax) than the refund claims (the increased deductions from ordinary income). The government is not

---

8. This is inconsistent with the arguments presented by the government in other cases, where it has attempted to defeat equitable recoupment. *See, e.g., United States v. Herring,* 240 F.2d 225 (4th Cir.1957); *United States v. Bowcut,* 287 F.2d 654 (9th Cir.1961); and other cases cited in footnote 7 where recoupment was attempted by the taxpayer.

9. This is inconsistent with arguments presented by taxpayers in other cases who have attempted to obtain equitable recoupment. *See, e.g., Minskoff v. United States,* 490 F.2d 1283 (2d Cir.1974); *Kojes v. United States,* 241 F.Supp. 762 (E.D.N.Y.1965); and other cases cited in footnote 7 where recoupment was denied the taxpayer.

seeking to offset against each other two taxes levied on the same transaction, but to offset the tax on one transaction against the tax on another. This it cannot do.

"The only sense in which these two claims could be said to arise out of a single transaction is that the determination that the timber expenses were deductible from ordinary income had an effect upon both the estate tax and the income tax. The fact that a single tax determination may affect the taxes on two transactions does not convert the two transactions into a single one. If such interdependency of separate claims is sufficient to make them arise out of the same transaction, the doctrine of equitable recoupment would be significantly extended beyond the 'limited scope' the Su-

preme Court accorded it in *Rothensies.*" (610 F.2d at 713–14.)

The *Wilmington Trust* court also considered "whether the litigant seeking recoupment of a time-barred claim had a fair opportunity to bring suit to recover the tax before the statute ran" (610 F.2d at 714). It concluded that, to the extent this factor might be relevant, it supported the denial of recoupment—since the government had one year in the case of the first trust, and over two years in the case of the second trust, in which to assess an estate tax deficiency after being put on notice of the plaintiff's claim for refund.[10]

Similarly, in *Ford v. United States,* 276 F.2d 17, 149 Ct.Cl. 558 (1960), the dictates of *Rothensies* were followed even though "equities" may have favored recoupment.[11] There, the taxpayers contended that, even though certain shares of a corporation were

10. The seemingly inconsistent holdings in *Herring* and *Wilmington Trust* might, perhaps, be explained by the fact the taxpayer in *Herring* who was allowed recoupment had no opportunity to file a claim to recover the tax before the limitation period expired (240 F.2d 225)—but, in *Wilmington Trust,* where recoupment was denied, the government had between one and two years in which to assess the tax before the statute expired (610 F.2d 703). In this case, the government contends that the "equities" should permit recoupment because it was put on notice of a possible estate tax deficiency "only" three months before the assessment of an estate tax deficiency became barred by limitation. But this Court concludes that, under *Rothensies,* the determination of a party's entitlement to recoupment should not turn upon whether or not there was an opportunity for assertion of the claim before the expiration of the statute of limitations. *Rothensies* expressly held that the doctrine of equitable recoupment should not be expanded to afford relief from the hardships which sometimes result from the operation of the statutes in individual cases—and that this limited doctrine may be applied to afford equitable relief only under facts, such as those in *Bull* and *Stone,* where "a single transaction constituted the taxable event claimed upon and the one considered in recoupment" (329 U.S. at 299, 67 S.Ct. at 272).

11. The government cites *Davis v. United States,* 77–1 U.S.T.C. ¶ 13,195 (N.D.Tex.1977), in support of its contention that equitable recoupment may be applied to prevent the inequities of unjust enrichment. In *Davis,* however, the court did not consider—or even mention—*Rothensies* (329 U.S. at 299–300, 67 S.Ct.

at 272). Moreover, *Davis* did involve a single transaction: an alleged income tax deficiency of $220,448.00. The estate had taken a deduction for this amount on the estate tax return, but later succeeded in recovering this very amount in a tax refund suit. Thus, the single transaction—the $220,448.00 deficiency—had been subjected to two taxes on inconsistent legal theories (deductible and thus subject to income tax for estate tax purposes; not subject to income tax for purposes of the successful tax refund suit). In addition, although *Davis* uses the term "equitable recoupment," it apparently involved the application of the doctrine announced in *Lewis v. Reynolds,* 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293 (1932), that the government is entitled to claim a right of offset of a barred tax liability where the refund claim and the setoff claim both relate to the same tax, for the same year, payable by the same taxpayer. This doctrine, which is sometimes referred to as "the defense of lack of overpayment," is based on the principle that "a taxpayer is not entitled to a refund unless he has in fact overpaid the particular tax...." *Dysart v. United States,* 340 F.2d 624, 627, 169 Ct.Cl. 276 (1965). In *Davis,* the government was allowed to offset the barred estate tax deficiency of $220,488.00 against the alleged overpayment of the same estate tax. In this case, the government is not seeking to offset an estate tax liability against an estate tax overpayment or an income tax liability against an income tax overpayment. Therefore, *Davis* does not support the claim for offset by equitable recoupment and the defense of lack of overpayment does not apply.

valued at a specific amount on the estate tax return, they were entitled to a higher valuation of the shares for determining the income tax which would be due when the shares were sold. The undervaluation of the shares on the estate tax return saved the estate $38,730.03—while the higher valuation on the income tax refund claim entitled the plaintiffs to recover $56,893.35. If the doctrine of recoupment were applied, the underpayment of estate tax would be offset against the overpayment of income tax, and the plaintiffs could recover only the difference. However, the court held that the doctrine of equitable recoupment did not apply because there was no single transaction which had been subjected to two taxes on inconsistent theories:

"The instant case comes fairly close to satisfying the recoupment standards of the Supreme Court. The value of the shares at the death of the plaintiff's father was the basis of the estate tax. The shares were undervalued and too little estate tax was paid. The value of the shares at the time of the father's death was the factor, so far as the litigation is concerned, which determined the amount of the plaintiff's taxable gain, and the amount of their tax. If the doctrine of recoupment were a flexible one, susceptible to expansion, it might well be applied in the instant case. But the teaching of Rothensies is that it is not a flexible doctrine, but a doctrine strictly limited, and limited for good reason." (276 F.2d at 23.)

■ However, even if there are inconsistencies in the lower court decisions, there is certainly none in the last Supreme Court decision which considered this matter: Rothensies v. United States, supra. From it—and from the later decisions most similar to the present case (Wilmington Trust, Ford)—it is obvious that (i) the doctrine of equitable recoupment must be strictly limited, and (ii) it applies only when there is a single transaction which has been subjected to two taxes on inconsistent legal theories. (329 U.S. at 299–300, 67 S.Ct. at 272.) The government's contrary arguments and authorities are rejected. And, under Bull, Stone, and Rothensies, the government is not entitled to recoup the time-barred estate tax deficiencies from the income tax refund due plaintiff because the two claims do not arise out of the same transaction.

Clearly, there was a "single transaction" in Bull and in Stone. In Bull, the government had assessed both an income tax and an estate tax on a sum of money paid to the estate for the value of the decedent's interest in a partnership; the one "taxable event" was the executor's receipt of that sum of money. In Stone, the one "taxable event" was the trust's receipt of certain income which had been incorrectly taxed to the trustee, rather than to the sole beneficiary of the trust. In both of these cases, a determination of the merits of the recoupment claim could be based upon proof of the one "taxable event" on which the plaintiff's refund claim was based.

This is not true in this case. The plaintiff's claim for refund of income taxes arises out of the decedent's right to deduct worthless business debts from ordinary income. The "taxable event" on which plaintiff's claim is based is the worthlessness of loans advanced by the decedent, i.e. the decedent's "loss of money." The estate tax deficiency, however, exists only because the estate did not include the claim for refund as an asset on the estate tax return. The "taxable event" on which the government's recoupment claim is based is the death of Guy Mann and the existence (and value) of the claim for income tax refund as an asset of his estate for estate tax purposes. The recoupment claim thus arises from a different transaction (the additional asset for estate taxes) than the refund claim (the increased deductions from ordinary income). As stated in Wilmington Trust:

"... The government is not seeking to offset against each other two taxes levied on the same transaction, but to offset the tax on one transaction against the other. This it cannot." (610 F.2d at 714.)

It is true, of course, that the determination that the plaintiff was entitled to a tax

refund had an effect upon both the income tax and the estate tax. However, "the fact that a single tax determination may affect the taxes on two transactions does not convert the two transactions into a single one" (*Wilmington Trust,* 610 F.2d at 714). If it did, the doctrine of equitable recoupment would be drastically expanded beyond the "limited scope" dictated by *Rothensies* —since, *if the government were granted relief in this case, it would be entitled to equitable recoupment in every case in which the estate of a deceased taxpayer is successful in a tax refund suit.*

And, even more than in *Rothensies,* to permit equitable recoupment in this case would seriously undermine the applicable statutes of limitations. In most cases, a taxpayer is allowed three years after a return is filed, or two years after the tax is paid, whichever is greater, in which to file a claim for refund of income taxes. I.R.C. § 6511(a). However, a statutory exception allows the taxpayer seven years in which to file a refund claim based on a deduction for worthless business debts. I.R.C. § 6511(d)(1). Likewise, the government is generally allowed three years from the date an estate tax return is filed in which to assess an estate tax deficiency, I.R.C. § 6501(a)—but this period is extended to six years after the return is filed if items in excess of 25% of the gross estate are omitted from the estate tax return. I.R.C. § 6501(e)(2).

Thus, Congress has created a specific exception to extend the time for assessment of estate taxes, but has expressly limited that exception to cases where the items excluded from the estate tax return represent a substantial portion of the gross estate. It seems clear that Congress intended to relieve an estate from the burden of reviving transactions more than six years old which involve less than substantial amounts. Since the government has not attempted to bring its claim under this statute—which would have entitled it to assess a deficiency as late as April 15, 1981—apparently the government did not consider the plaintiff's claim for refund to have a value in excess of 25% of the gross estate.

These limitation statutes would be undermined unless the recoupment claim could be established from proof of the transaction on which the plaintiff's claim for refund is based (as in *Bull* and *Stone*). However, substantially different proof would be required in this case. The refund claim required the plaintiff to produce evidence that business loans were made by the decedent and that the loans became worthless in 1971. The recoupment claim presents an additional issue—the value of the claim for refund of income taxes as of the date of the decedent's death in 1973. This issue requires proof of the fair market value of the refund claim as of November 15, 1973—some two years after the loans became worthless. The "date of death value" of the claim for refund is not established by the amount of refund to which the plaintiff has proved he is entitled; rather, this value must be established by proof of the price which would have been agreed upon—on the date of death—by a willing seller and a willing buyer, neither being compelled to buy or sell, and both having reasonable knowledge of "relevant facts" (which may include facts discovered after the date of death). *United States v. Simmons,* 346 F.2d 213 (5th Cir.1965).

The value of the claim for refund on the date of death is an essential element of the government's recoupment claim and involves factors which were not relevant to the plaintiff's claim for refund. Since the recoupment claim cannot be established from proof of the "taxable event" on which the plaintiff's claim is based, the statute of limitations for the assessment of estate taxes would be undermined if the plaintiff is required to litigate the government's time-barred claim. (*See Rothensies,* 329 U.S. at 302–03, 67 S.Ct. at 274.)

Therefore, since there is not a "single transaction or taxable event" that has been "subjected to two taxes on inconsistent legal theories," the government is not entitled to recover the limitations-barred estate tax deficiency by way of equitable recoupment.

## 1142

*I.R.C. §§ 6401(a), 6514(b)*

 The plaintiff also contends that the government's equitable recoupment claim is precluded, as a matter of law, by I.R.C. §§ 6401(a) and 6514(b). This contention is rejected.[12]

These sections prohibit the government from crediting an overpayment of taxes against a tax liability which is barred from collection by limitations. They provide:

> "*Sec. 6514(b) Credit After Period of Limitation.* Any credit against a liability in respect of any taxable year shall be void if any payment in respect of such liability would be considered an overpayment under section 6401(a)."

> "*Sec. 6401(a) Assessment and Collection After Limitation Period.* The term 'overpayment' includes that part of the amount of the payment of any internal revenue tax which is assessed or collected after the expiration of the period of limitation properly applicable thereto."

In *McEachern v. Rose,* 302 U.S. 56, 58 S.Ct. 84, 82 L.Ed. 46 (1937), the Supreme Court held that these same provisions in the 1928 Code[13] prevented the application of equitable recoupment to allow the government to offset the taxpayer's overpayment against an unpaid tax whose collection had been barred by limitations. However, with one exception,[14] the holding in *McEachern* has not been followed in cases where the defense of equitable recoupment has been raised.[15] Moreover, the plaintiff's contention is contrary to *Rothensies*—which was

decided some thirteen years after *McEachern*—where the claim for equitable recoupment was considered by the Supreme Court and denied on the merits.[16]

Accordingly, I.R.C. §§ 6401(a) and 6514(b) do not preclude a claim for equitable recoupment either by the government or by the taxpayer.

*Conclusion*

The government is not entitled to equitable recoupment in this case. If it were, this doctrine would be expanded drastically beyond the "limited scope" dictated by *Rothensies* 329 U.S. 296, 67 S.Ct. 271, 91 L.Ed. 296—indeed, to the extent that the government would be entitled to equitable recoupment in every case in which the estate of a deceased taxpayer is successful in a tax refund suit.

This is not correct. The doctrine of equitable recoupment is not applicable. And, the plaintiff is entitled to judgment as a matter of law.

---

**12.** The government, too, makes this argument when it is attempting to defeat equitable recoupment. *See United States v. Herring,* 240 F.2d 225, 227 (4th Cir.1957); and other cases cited in footnote 7 where recoupment was attempted by the taxpayer.

**13.** Int.Rev.Code of 1928, §§ 607, 609(a), 45 Stat. 874, 875 (now I.R.C. §§ 6401(a), 6514(b)).

**14.** *McEachern* was followed in *Lyeth v. Hoey,* 112 F.2d 4 (2d Cir.1940), but it has not been followed by the Second Circuit in subsequent cases. One court did note that "No persuasive reason seems to have been advanced as to why *McEachern v. Rose* does not hold that recoupment in tax cases is no longer available although several have been offered." *Kojes v.*

*United States,* 241 F.Supp. 762, 764 (E.D.N.Y. 1965).

**15.** See cases cited in footnote 7 of this opinion.

**16.** In *Rothensies,* the Court merely mentioned, by footnote, that corollary statutes in the 1928 Code "seem to direct a result opposite to that asked by [the recoupment claim] ... And *cf. McEachern v. Rose.*" (329 U.S. at 299, n. 1, 67 S.Ct. at 272, n. 1.) The Court also implied—again, by footnote—that those statutes *could* "be taken to compel the conclusion we reach in this case" (329 U.S. at 302, n. 3, 67 S.Ct. at 273, n. 3), but it is clear that the Supreme Court did not view these statutes, nor the holding in *McEachern,* as a bar to a claim of equitable recoupment.